NelsON, J.,
delivered the opinion of the Court.
Oii the trial of this action of ejectment the plaintiff read, in evidence, a deed of trust executed by the defendant to C. C. Clay, on the 21st May, 1868, upon a saw-mill, cotton-gin, steam engine and boiler, and also upon the tract of land, containing 64 acres, which is sued for in this action. The object of the deed was to secure certain debts therein described; and, pursuant to the powers conferred by it, the trustee advertised and sold the property for $735.10, at public sale, to John T. Furguson, the plaintiff, to whom he executed a deed, 1st March, 1869, which was • also read in evidence to the jury. A deed, from J. A. Coleman to Luther U. Coleman, for the same tract of land, bearing date 16th February, 1866, was also read in evidence. The jury found in favor of defendant. The plaintiff appealed, and the only question made in his behalf is upon that part of the charge of the Circuit Court which is in the following words, viz.:
“The defendant, however, insists that the deed from himself to C. C. Clay, trustee, was procured by fraud, and conveys no legal title to the purchaser. The Court charges you that, if you find, from the proof, that the plaintiff and C. C. Clay, the trustee, were members of the same firm, doing business in partnership at the time the trust deed was given, and the trust deed was given to secure a debt going to said partnership, then if the deed was procured by the fraud *380 of said Clay, the plaintiff would acquire no title by the deed from Clay to himself. If Clay, by false and deceitful representations, designed to deceive the defendant, procured the defendant to make him the deed, which he would not have done without such false- representations and improper advantage taken of him, then the deed would be fraudulently obtained, and would not divest the defendant of the legal title so far as C. C. Clay and the plaintiff are concerned, and you must find for the defendant.”
This charge is erroneous. There is no controversy as to the facts that the defendant executed the deed, and that the same was duly registered. He would not avoid its effect by appearing on the day of sale, and proclaiming, as he did in this case, in the hearing of the bidders, that the deed was procured by fraud. If' such were the fact, the plain and obvious remedy was to seek relief in a Court of Equity. Solemn assurances in writing can not be annulled by mere verbal declarations; nor is a Court of Law the proper forum in which to litigate the question whether a deed, duly executed and registered, is null and void for fraud on the part of the bargainee in obtaining it. Such a question, peculiarly and appropriately, belongs to a Court of equitable jurisdiction, and can not properly be determined in an. action of ejectment.
We have not been referred to any authorities on this subject, and are not aware that the question has been authoritatively adjudicated in this State. In Pratt v. Phillips, 1 Sneed, 547, which was an action *381 of ejectment, it was said it was error “to admit tbe declaration of one of tbe executors tending to establish that tbe deed was, in fact, made at a different time from that which its date imports. This fact could not be established on a trial in ejectment in a Court of law.” In Curle v. Barrel, 2 Sneed, 66, 67, which was a bill in equity filed to enjoin the defendant from relying, on the trial of an action of ejectment, upon a grant for five thousand acres of land alleged to have been obtained from the State in fraud of the law, the demurrer to the bill was sustained mainly upon the ground that whether the grant was voidable or not is a question between the State and grantee. The same principle was applied, or announced, in Bowman v. Bowman, 3 Head, 50; Polk v. Hill and others, 2 Coop. Overt. T. R., 535, foot page; Polk v. Windle and others, Ibid, 777, foot; Smith’s lessee v. Winton, 1 Coop. Overt. T. R., 181, foot; Neal v. E. T. College, 6 Yerg., 197. It was said, however, in Curle v. Barrel, that “in the action of ejectment, either party may obviate the effect of a grant if he can show that, for any cause, it is void:” 2 Sneed, 66. On the other hand, Judge Overton, in Smith’s lessee v. Winton, observed: “It is not now necessary for me to say how the practice of permitting equitable matter to be given in evidence to a jury in ejectment came into existence; nor whether it be consistent with legal principles or not:” 1 Coop. Overt. T. E., 181, foot.
Mr. Greenleaf says that “fraud practiced by the party seeking the remedy upon him against whom it is sought, and in that which is the subject-matter of *382 the action or claim, is universally held fatal to his title. The covin, says Lord Coke, doth suffocate the right. The foundation of the claim, whether it be a record, or a deed, or a writing without seal, is of no importance, they being alike void, if obtained by fraud 1 Greenl. Ev., s. 248, 2d ed. It does not very clearly appear whether this observation, was intended to apply to the evidence in an action of ejectment. In the notes to Phillips on Evidence, it is said, in reference to sealed instruments, that “parties and privies are estopped, at law, from alleging in avoidance of the deed, or for the purpose of varying its operation, that the other party defrauded them by false representations in respect to the subject-matter to which it relates.” Again, it is observed that “it may be laid down as a general rule, and we believe will be sustained by all the cases, that independent of any statutory provision, no fraud whatever can be set up in a Court of Law to affect the operation of a sealed instrument, • save such as relates to the execution; ” and numerous American cases are referred to in support of this proposition. The learned annotators proceed to show that the mis-reading or mis-expounding of the deed, the drunkenness or imbecility of the party making it, the fact that it was extorted by duress, or that the maker was an infant or feme covert, or that the deed was never duly delivered, or was delivered merely as an escrow, may be inquired into in a Court of Law, for ’’the purpose of showing “fraud in the execution” of the deed; but that where the due and proper execution of the instrument is established, then, if the bar- *383 gainor seeks to avoid it, he must resort to a Court of Equity: See 2 Cow. & Hill’s and Edwards’ Phill. on Ev., 5th Am. ed., 576, 577. This view seems also to be sustained, to some extent, in 1 Story’s Eq. Jur., s. 437, and "Willard’s Eq. Jur., 165, 306, 307.
Without pausing to consider the effect, if any, of the provisions in the Code destroying the distinction between sealed and unsealed instruments, we hold that the law is correctly stated in the passages cited from the notes to Philips; that the act of ejectment is purely a legal action; that where, as in this case, it appears from the evidence that the deed was duly executed, the maker of the deed, when sued in ejectment, is estopped to deny its execution; and that, if he relies upon equitable circumstances to avoid his own act, he must go into a Court of Equity, where questions of fraud cañ be more correctly determined than in a Court at law. The permanent establishment of the Chancery Court by the new Constitution will be in vain, if the separate and appropriate jurisdiction o'f the legal and equitable tribunals is not carefully defined and maintained.
In the instructions of his Honor in this ease, the jury was directed: first, to ascertain whether there was a partnership between the plaintiff and trustee; second, whether the trust deed was executed to secure a debt due the firm; and third, to determine whether the deed was procured from the defendant by the fraud of the trustee, a partner in the firm. Such inquiries are frequently of a most delicate and intricate nature, and require for their determination the best skill and *384 experience of equitable tribunals, and the facts presented in this record do not by any means satisfy us that there was any fraud in the procurement of the deed. The defendant alleges that Clay, the trustee, represented to him that the defendant’s father was anxious for him to assume a debt due from the firm of Given, Friend \& Co., of which the father was a partner, to secure the payment by a deed of trust upon the land in controversy; that he, the defendant, was at first opposed to it, but finally yielded to his persuasions, under the belief that his father desired him to do so: when, in truth and in fact, no such desire had been expressed. On the other hand, there are strong circumstances tending to show that John A. Coleman, the father, had promised Ferguson that, if time were extended, he would procure a party Avho was indebted to him for a steam saw-mill and gin to become his security; that this promise was communicated to Clay by Ferguson, and that Clay, ascertaining that defendant was debtor to his father to a larger amount than the debt secured by the deed of trust, persuaded him, in an interview of some three or four hours duration, to enter into the arrangement. This debt was paid by the defendant to his father or for his benefit, after assuming the debt secured by the deed of trust and shortly before the latter went, into bankruptcy. It is not easy to perceive why he did not secure himself before paying the debt, or to discover upon what ground the jury considered the deed fraudulent. But it is needless to enter into ' a further statement of the evidence, as this Court does ' not de *385 termine the question of fact, and rests its action upon the error in that part of his Honor’s charge which is above recited.
Reverse the judgment and remand the cause.