\* Bank *v.* Motherwell Iron, etc., Co.

(*Jackson.* June 17, 1895.)

1. Receiver. *Appointed by foreign Court.*

A receiver appointed by the Courts of one State, cannot sue in another State to recover property belonging to the estate which has never been in his possession. (*Post, pp. 179, 180.*)

Cases cited and approved: Cagell *v.* Wooldridge, 8 Bax., 580; 17 How., 322.

2. Attachment. *Upon judgment confessed by embarrassed corporation in another State valid.*

A statute making a judgment confessed by a corporation after a petition has been filed for its enforced dissolution void as against the receiver and creditors, is not effective to defeat an attachment of its property made for the judgment in the Courts of another State. (*Post, pp. 186, 187.*)

Cases cited and approved: Mosby *v.* Williamson, 5 Heis., 278; Comfort *v.* McTeer, 7 Lea, 660; Bank *v.* Lumber, etc., Company, 91 Tenn., 12; 104 U. S., 54.

3. Same. *By nonresident creditor of nonresident debtor's property situated in this State.*

Our statute providing that residents of other States, having exhausted their remedies there against their debtors residing in such States, may subject to the satisfaction of their claims property situated in Tennessee, gives such creditors a remedy to the same extent and in the same manner and with the same priority as a citizen of Tennessee. (*Post, pp. 180–185.*)

Code construed: Section 5040 (M. & V.); § 4297 (T. & S.).

Cases cited and approved: Taylor *v.* Badoux, 92 Tenn., 249; Lessenbee *v.* Holt, 1 Sneed, 42.

*The rights of a receiver in respect to property outside of the jurisdiction in which he was appointed, are examined, with a review of the authorities, in a note to *Gilman* v. *Hudson River Boot & Shoe Manufacturing Company* (Wis.), 23 L. R. A., 52.

4. SAME.   *Exhaustion of remedy in another State.*

That a nonresident creditor has exhausted his remedy against
his debtor in the State of his residence, so as to be enabled to
take advantage of § 5040 (M. & V. Code) permitting him to sub-
ject property in this State to the payment of his claim, is
shown by the fact that the property of the debtor in the State
of his residence has been placed at the suit of creditors in the
possession of a receiver under a statute forbidding interfer-
ence with it.   (*Post, pp. 187, 188.*)

Code construed: Section 5040 (M. & V.); § 4297 (T. & S.).

Cases cited and approved: Turley v. Taylor, 3 Lea. 173; Mont-
gomery v. McGhee, 7 Hum., 234; 149 U. S., 479; 101 U. S., 690.

5. SAME.   *Priority.*

A nonresident who exhausts his remedy against his debtor in
the State of their residence, and then attaches the debtor's
property situate in this State, acquires priority as to the at-
tached property over any right or claim based upon an en-
forced bankrupt or insolvent proceeding against the debtor in
the State of his residence.   (*Post, pp. 180–186.*)

Cases cited: Marr v. Bank, 4 Cold., 471; 133 U. S., 107, 129; 147 U.
S., 476; 136 U. S., 348; 84 N. Y., 367; 99 N. Y., 448.

---

FROM   SHELBY.

---

Appeal from Chancery Court of Shelby County.
W. D. BEARD, Ch.

WM. M. RANDOLPH & SONS and U. W. MILLER
for Bank.

TAYLOR & CARROLL for Iron & Steel Co.

MCALISTER, J.   This bill was filed in the Chan-
cery Court of Shelby County by the Commercial

National Bank, located at Columbus, in the State of
Ohio, to enforce the collection of a judgment ob-
tained by it in the State of Ohio against the Mother-
well Iron & Steel Company, a corporation also dom-
iciled in the State of Ohio.   The defendant, C. Mun-
dinger, was the agent at Memphis of the Mother-
well Iron & Steel Company, the judgment debtor,
and had in his possession certain property which
complainant sought to subject to the payment of its
judgment.   The bill alleged that the Motherwell Iron
& Steel Company was insolvent, and that the judg-
ment could not be collected in the State of Ohio,
where it was rendered; that execution had issued, and
was returned by the proper officer unsatisfied.   In
accordance with the prayer of the amended bill, an
attachment issued and was levied upon certain goods,
wares, and merchandise in the hands of Mundinger
as the agent of the defendant company at Memphis.

The Motherwell Iron & Steel Company filed an
answer to the original and amended bills, in which
it was averred that, prior to the rendition of the
judgment in Ohio, where both corporations were
domiciled, certain creditors filed their petition against
it in the Court of Common Pleas of Hocking County,
Ohio, to have it dissolved as a corporation and its
affairs administered under the statutes of Ohio; that,
in pursuance of such proceedings, the Court, on July
6, 1892, made an order appointing one Frank C.
Rochester temporary receiver, with authority to take
charge of all the property, of every kind and de-

scription, belonging to said corporation. The judgment in favor of the Commercial National Bank against the Motherwell Iron & Steel Company for the sum of $5,000, was confessed on July 20, 1892, in the Court of Common Pleas for Pickaway County, Ohio, in pursuance of a warrant of attorney embodied in the note. It further appears that, on October 12, 1892, the Hocking County Court of Common Pleas pronounced a decree dissolving the Motherwell Iron & Steel Company as a corporation, and appointed Rochester permanent receiver to wind up its business and distribute its assets among its creditors. Rochester qualified and entered upon the discharge of the duties pertaining to his receivership. It is claimed by defendant that the confession of the judgment without notice to the receiver, and the prosecution of the present suit, is an attempt to evade the laws of Ohio, and to acquire for the Commercial National Bank a priority to which it is not entitled, and that complainant and defendant, being residents of the State of Ohio, the Court will not lend its aid to such purpose. Defendant further insists that said confessed judgment was an absolute nullity in the State of Ohio, where rendered, and is, therefore, of no extraterritorial validity. Said contention is based upon § 5661 of the Revised Statutes of Ohio, regulating insolvent corporations, to wit: "All sales, assignments, transfers, mortgages, and conveyances of any part of the estate, real or personal, including things in action, of every descrip-

tion, made, after the petition for the dissolution of the corporation is filed, in payment of, or , as security for any existing or prior debt, or for any other consideration, and all judgments confessed by such corporation after that time, shall be absolutely void as against the receiver appointed on such petition, and as against the creditors of the corporation."

It further appears that on the twenty-eighth of February, 1893, Frank C. Rochester, the Ohio receiver, filed his bill in the Chancery Court of Shelby County against the Commercial National Bank, and McLendon, the Sheriff of said county. The bill recites in full the proceedings in the State of Ohio for the dissolution of the Motherwell Iron & Steel Company as an insolvent corporation, and his appointment as temporary receiver. It also exhibits the decree of October 12, 1892, dissolving the Motherwell Iron & Steel Company as a corporation, and the appointment of complainant as permanent receiver. The bill then claims that the judgment rendered in Ohio was void, for the reason that the Motherwell Iron & Steel Company was then in the hands of complainant as receiver. The bill further charges that, at the date of the filing of its bill, the Commercial National Bank and its officers knew of the proceedings in Ohio to wind up the Motherwell Iron & Steel Company, and that complainant had been appointed receiver and directed to take charge of all the assets of the company, and had entered upon the discharge of his duty. It is then stated that,

by the laws of the State of Ohio, all creditors are required to come in and present their claims, to receive *pro rata* distribution, and that by such laws, after the filing of such petition, one creditor could not obtain priority over others, but each and all were required to fare alike.

The prayer of the bill is that a receiver be appointed to take charge of the goods in Memphis, and sell them, or that they be turned over to complainant under his appointment as receiver in the State of Ohio, so that, in either event, he may realize the proceeds thereof and take them to Ohio.

Answer was filed by the Commercial National Bank, in which it relied upon the validity of its judgment recovered in Ohio. It submits that the appointment of Rochester as receiver in Ohio, gave him no title to or right to the possession of the property of the Motherwell Iron & Steel Company in Tennessee, and avers the fact to be that Rochester had not taken such property into possession, and had not assumed any control of it when the judgment was recovered in Ohio, and when the bill was filed in Tennessee and the property attached by the Commercial National Bank.

The answer then denies that the Courts of Tennessee have any jurisdiction to administer the laws of Ohio with reference to its corporations, and insists that in Tennessee the Motherwell Iron & Steel Company, at the bringing of this suit, was only an

12—11 P

individual owning the property in the hands of Mun-dinger as an individual could own it.

On the twenty-ninth of March, 1893, after the last bill was filed, a decree was entered in both suits, by agreement of parties, that all the property in controversy in Tennessee be turned over to Rochester, the Ohio receiver, to be sold by him for the best price possible, and that the fund arising from the sale be held by him as a separate fund, to be disposed of according to the final decree made by the Court in the two suits.

The two causes were heard together, and the Chancellor decreed: First, the confession of the judgment by the Motherwell Iron & Steel Company, in the State of Ohio, on July 20, 1892, in favor of the Commercial National Bank, was, by the laws of Ohio, absolutely void, as against Rochester, the receiver, and he accordingly dismissed the bill of the Commercial National Bank. Second, that Rochester, as receiver of said defunct corporation, have and retain possession of said property, to be administered by him as directed by the proper Court, in the State of Ohio. The Commercial National Bank appealed, and has assigned errors.

The insistence of complainant is that, by virtue of its original and amended bills, and the attachment sued out thereunder, it acquired a lien upon the property in controversy, and that such lien is superior to any claim or title of Rochester, the Ohio receiver. Complainant bases its remedy upon § 5040

(M. & V.), Code, viz.: "When a judgment has been recovered in any other State against a resident of such State, and the creditor has exhausted his legal remedy, the real or personal property of the debtor in this State may be subjected to the satisfaction of such debt by bill stating the facts under oath, and filed in the Court of the district in which the property is situated." *Taylor* v. *Badoux*, 8 Pickle, 249.

It will be remembered that one of the present bills was filed by the receiver, in which he prays that said goods be turned over to him under his appointment as receiver in the State of Ohio, or that a receiver be appointed to take charge of and sell the goods, so that, in either event, he may realize the proceeds of the goods and take them to Ohio to enable him to administer his trust, to the end that the assets of the corporation may be divided *pro rata* among all its creditors. This bill cannot be maintained for any purpose, for want of authority in the receiver to institute an action in a jurisdiction beyond that of his appointment. Says Mr. High, in his work on Receivers, § 239, viz.: "Upon the question of the territorial extent of a receiver's jurisdiction and powers for the purpose of instituting actions connected with the receivership, the prevailing doctrine, established by the Supreme Court of the United States and sustained by the weight of authority in various States, is that the receiver has no extraterritorial jurisdiction or power of official ac-

tion, and cannot go into a foreign State or juris-
diction and there institute a suit for the recovery of
demands due the person or estate subject to his re-
ceivership. His functions and powers for the pur-
poses of litigation are held to be limited to the
Courts of the State within which he was appointed,
and the principles of comity between nations and
States, which recognize the judicial decisions of one
tribunal as conclusive in another, do not apply to such
a case, and will not warrant a receiver in bringing
an action in a foreign Court or jurisdiction.'' *Booth*
v. *Clark*, 17 How., 322; Beach on Receivers,
§§ 680, 681. We think, therefore, the Chancellor
was in error in recognizing the right of the Ohio
receiver to sue in a Tennessee Court to recover
property which had never been in his possession.
*Cayell* v. *Woolridge*, 8 Bax., 580.

The next question presented is, whether, in view
of the proceedings in Ohio and the laws of that
State, where both of these corporations are domiciled,
the Commercial National Bank is entitled to enforce
its judgment against the Motherwell Iron & Steel
Company in the Courts of Tennessee, and to subject
to the satisfaction thereof property belonging to the
latter in this State. It will be observed that the
Motherwell Iron & Steel Company made no volun-
tary conveyance or transfer of its property in Ohio.
The proceedings against it in Ohio were *in invitum*,
and under statutes authorizing the dissolution of in-
solvent corporations.

This fact must be kept in view, for it will be found to be the differential feature that marks two distinct lines of decision. In *Cole* v. *Cunningham*, 133 U. S., 107, 129, and in *Barnett* v. *Kinney*, 147 U. S., 476, 481, the Supreme Court of the United States points out the difference between a voluntary transfer of property out of the jurisdiction, and the transfer of such property as the result of legal proceedings at the place of his domicile, saying, viz.: "Although, in some of the States, the fact that the assignee claims under a decree of a Court, or by virtue of the law of the State of the domicile of the · debtor and the attaching creditor, and not under a conveyance by the insolvent, is regarded as immaterial, yet, in most, the distinction between involuntary transfers of property, such as work by operation of law,. as foreign bankrupt and insolvent. laws, and a voluntary conveyance is recognized. The reason for the distinction is, that a voluntary transfer, if valid where made, ought, generally, to be valid everywhere, being the exercise of the personal right of the owner to dispose of his own, while an assignment by operation of law has no legal operation out of the State in which the law was passed."

. Says Mr. Wharton, in his Conflict of Laws, §§ 799, 800, viz.: "With regard to proceedings in bankruptcy or insolvency of the Courts of the several States *in invitum*, the universal rule is that such proceedings are ineffective as against attaching

creditors until they are either adopted by domestic
process, or the property is realized by the assignee.
Local lien creditors whose liens are prior to the ac-
tual arrest under local process, unquestionably have
precedence.    The question of priority between them
and the bankrupt assignee is one of which the *lex
rei sitæ* is the sole arbiter.''    The author in the
text is speaking of State bankrupt or insolvent laws,
and not in respect of national bankruptcies.

In *Reynolds* v. *Adden*, 136 U. S., 348, Mr. Jus-
tice Bradley referred to the same distinction, viz.:
''Every State exercises to a greater or less extent, as
it deems expedient, the comity of giving effect to
the insolvent proceedings of other States, except as
it may be compelled to give them full effect by the
Constitution of the United States.    Where the trans-
fer of the debtor's property is the result of a ju-
dicial proceeding, as in the present case, there is
no provision of the Constitution which requires the
Courts of another State to carry it into effect, and,
as a general rule, no State Court will do this to
the prejudice of the citizens of its own State.''    Our
statute (§ 5040, M. & V. Code) is not limited to
citizens of this State, but, as held by this Court in
*Taylor* v. *Badoux*, 8 Pickle, a citizen of another
State is entitled to pursue the remedy it affords.
*Lisenbee* v. *Holt*, 1 Sneed, 42-51.

It was held by the Court of Appeals of New York
in *Hibernia National Bank* v. *Lacombe*, 84 New York,
367, that an assignment by virtue of or under a for-

eign law does not operate upon a debt or right of action as against a person in that State, and that a foreign creditor rightfully in a Court of that State, pursuing a remedy given by the statutes of that State, may enforce that remedy to the same extent, in the same manner, and with the same priority of lien as a citizen. In that case, it appeared that the plaintiff, a national bank organized and having a place of business in New Orleans, purchased, for value, of defendant, the Merchants & Traders' Bank, a Louisiana corporation, a draft drawn on bankers in the city of New York for $10,000, payable to plaintiff's order. The draft was duly presented to the payors in New York, and payment refused. It was duly protested, and notice given to the drawer. It further appeared that, after the delivery of the draft to plaintiff, the Merchants & Traders' Bank was placed in liquidation under the laws of Louisiana, and commissioners were appointed to take possession of and administer its assets. The plaintiff afterwards commenced an attachment suit in the Supreme Court of New York, which was served on M. Morgan's Sons, bankers of New York, who had funds of the Merchants & Traders' Bank, of New Orleans, in their hands. It was held that the statute of New York authorized the proceeding, and that neither the law of Louisiana nor the adjudication of that State under which the commissioners were appointed could have any operation here to defeat or affect the lien of plaintiff's attachment. The Court said, viz.: "The

remaining question relates to the claim made by the commissioners appointed by the Court in Louisiana. Neither the law nor the adjudication under which they were appointed can have any operation here. They are strictly local, and affect nothing more than they can reach, for the rule, as we conceive, is well settled that an assignment by virtue of or under a foreign law does not operate upon a debt or right of action as against a person in this State. The plaintiff, as we have seen, although a · foreign creditor, is rightfully in our Courts pursuing a remedy given by our statutes. It may enforce that remedy to the same extent and in the same manner, and with same priority as a citizen. Any other construction would make the permission of the statute a form without benefit—a formality and not matter of substance, a mere delusion. Once properly in Court and accepted as a suitor, neither the law, nor Court administering the law, will admit any distinction between the citizen of its own State and that of another. Before the law and in its tribunals, there can be no preference of one over the other. . . It follows that, however fatal the adjudication in Louisiana may be to the existence of the defendant corporation in that State, it cannot deprive its creditors of the remedies afforded by other forums against its property. This action was commenced before the intervention of the commissioners, and· to it they have established no defense, nor shown sufficient reason for defeating the priority of lien ac-

quired by the proceedings therein. *Willitts* v. *Waite*, 25 N. Y., 586; *Folger* v. *Columbian Insurance Co.*, 99 Mass., 267. If the plaintiff has, by its proceedings, obtained an advantage against the law and adjudications of Louisiana, it is a resident of that State, and, as such, the appellant's counsel contends, may there be overhauled and made to account ˙ for what it has gained here. To that remedy, if it exist, the defendant may properly be remitted.''

In the later case of Waite, reported in 99 New York, 448, the Court of Appeals of that State held that, where neither the rights of domestic creditors, nor of foreign creditors proceeding against the property under State laws were involved, the foreign assignees may be permitted to sue in their Courts for the benefit of all the creditors, on principles of national comity, without a surrender of the principle that a foreign statutory assignment does not operate as a transfer of the property in that State. It was distinctly held in that case that the statutory title of foreign assignees can have no recognition in that State solely by virtue of the statute. The case of *Cole* v. *Cunningham*, 133 U. S., 107, is not an authority against the principles already announced. It appeared in that case that all the parties were domiciled in the State of Massachusetts. The debtor had made a general assignment of all his property for the benefit of all his creditors, as required by the laws of that State. A creditor was proceeding, in a foreign jurisdiction, to subject property of his

insolvent debtor, situated in the sister State, to the satisfaction of his claim. Upon bill filed in the State of Massachusetts, where all the parties resided, the creditor was enjoined from proceeding further with the prosecution of his suit to obtain preference in property situated in such foreign jurisdiction. It is obvious that case is entirely dissimilar in its facts to this case. We have also carefully examined the case of *Bagby* v. *Atlantic, Mississippi & Ohio Railroad Co.*, 86 Pa., cited in the brief of defendant's counsel, and, while it supports his contention, the case, in our opinion, is opposed to the great weight of authority on this subject. The other cases, *Hudley* v. *Freedman's Savings & Trust Co.*, 2 Tenn. Ch., and *Marr* v. *Bank*, 4 Cold., we do not think apposite.

It is contended, however, on behalf of defendant, that complainant's judgment cannot be enforced in the State of Tennessee, because it was void in the State of Ohio, where rendered. This contention is based upon the statute of that State, which provides, viz.: "And all judgments confessed by such corporation (after the petition for the dissolution of the corporation is filed) shall be absolutely void as against the receiver appointed on such petition, and as against the creditors of the corporation." It will be observed that the statute does not, in terms, declare that the judgment shall be void as against the corporation, nor does it undertake to vest the receiver with the title to property belonging to the insolvent corporation situated beyond the limits of

that State. The statute only provides that such judgment shall be void as against the receiver and the creditors of the corporation. The decree dissolving the Motherwell Iron & Steel Company was not rendered in Ohio until the twelfth day of October, 1892, and until that time the corporation was a going concern, with the right to exercise its corporate functions, and was, of course, subject to be impleaded at the suit of any creditor. *Mosby* v. *Williamson*, 5 Heisk., 378; *Comfort* v. *McTeer*, 7 Lea, 660; *Bank* v. *Lumber & Manufacturing Co.*, 7 Pickle, 12; Wait's Insolvent Corporations, § 372; *National Bank* v. *Insurance Co.*, 104 U. S., 54; 2 Morawetz on Corporations, p. 73, § 2010.

It is true, the petition for the dissolution of the corporation was filed on the sixth of July, 1892, and this judgment was confessed afterwards, to wit, on the twentieth of July. It is only against the receiver and creditors of the corporation that such judgment is by the statute declared void. We are of opinion that this statute is only operative in Ohio in favor of the receiver, and in respect of property situated in that State. The chattels in controversy were in the State of Tennessee, and subject to its laws when those attachment proceedings were begun, and, being the property of the Motherwell Steel & Iron Company, were subject to complainant's judgment, and the lien of complainant's attachment is in nowise affected by the proceedings that transpired in Ohio.

Finally, it is insisted by counsel for defendant

that it does not appear that complainant has exhausted
its legal remedy in the State of Ohio. This con-
tention is based upon the language of § 5040, M.
& V. Code, viz.: "When a judgment has been re-
covered in any other State against a resident of such
State, and the creditor has exhausted his legal rem-
edy," etc. It is claimed on behalf of defendant
that, up to the date of filing the amended bill in
this cause, as shown by the record, the only execu-
tion that had issued from said judgment was levied
upon property of defendants, or some of them. The
proof in the record shows that the property levied
on was either released or subject to prior liens, and
that nothing could be made in satisfaction of the
judgment. It is, moreover, a conclusive answer to
this position that, at the date of the rendition of
complainant's judgment in Ohio, all the property of
the Motherwell Iron & Steel Company was, and has
continued to remain, in the hands of Rochester, re-
ceiver, and complainant absolutely had no remedy in
the State of Ohio for the collection of its judgment.
It had, to all intents and purposes, in the language
of the statute, exhausted its legal remedy. *Porter* v.
*Sabin*, 149 U. S., 479; *Turley v. Taylor*, 3 Lea, 173;
7 Hum., 234; *Case* v. *Beauregard*, 101 U. S., 690.

It results that the bill of Rochester, receiver, filed
herein, must be dismissed, and complainant will be en-
titled to a decree for the amount of its judgment and
interest, and to subject the property herein attached,
or its proceeds, to the satisfaction of said decree.