## ZACHER v. FIDELITY TRUST & SAFETY–VAULT CO. et al.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1901.)

No. 815.

**1. RECEIVERS—RIGHT TO PROPERTY IN ANOTHER STATE.**

A receiver appointed under Gen. St. Conn. 1888, § 1942, relative to winding up corporations, by a court of that state,—neither the statute nor the decree of the court appointing him dissolving the corporation or vesting in him its property or powers,—cannot by virtue of his receivership recover property of the corporation in another state, as against a creditor there attaching it.

**2. SAME—EFFECT OF ASSIGNMENT.**

The lien of a creditor attaching property of a Connecticut corporation in Kentucky after appointment of a receiver for it by a Connecticut court,— the receiver not being vested with the property or powers of the corporation,—is not displaced by the subsequent general assignment to the receiver by the corporation.

**3. FEDERAL COURTS—FOLLOWING STATE DECISION.**

The decision of the court of appeals of Kentucky on the question of the right to property in Kentucky of a Connecticut corporation, as between its receiver appointed by a Connecticut court and creditors making attachment in Kentucky after a general assignment to the receiver by the corporation, that the assignment was not a general voluntary assignment, and that therefore the receiver was not entitled to the property, is binding on a federal court in a suit between the receiver and such attaching creditors for the property.[1]

**4. ESTOPPEL.**

A creditor attaching property of a corporation in one state is not estopped to assert his right to it, as against the receiver of the corporation appointed in another state, by reason of filing his claim in the proceedings in the latter state; he not having ceased to assert his right to the attached property.

Appeal from the Circuit Court of the United States for the District of Kentucky.

Alex. P. Humphrey, for appellant.

W. O. Harris and John C. Doolan, for appellees.

Before LURTON and SEVERENS, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge. A fund in the registry of the court below belonging to the Newport News & Mississippi Valley Company, a corporation of the state of Connecticut, is claimed by the appellant as receiver appointed under an order of a Connecticut court, and also by the appellees, who have attached the fund under the gar-

---

[1] State laws as rules of decision in federal courts, see notes to Griffin v. Overman Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

106 F.—38

nishment statutes of Kentucky. The facts essential to an under-standing of the points upon which the case must turn are these: The Newport News & Mississippi Valley Company is a corporation organized under a special charter granted by the state of Connecti-cut; whereby it was authorized to construct, or acquire by purchase or lease, lines of railroad, and to operate same in any state of the United States except the state of Connecticut. Under this roving charter it leased the railroad of the Chesapeake, Ohio & Southwest-ern Railroad Company, a Kentucky corporation, whose railroad was wholly within the states of Kentucky and Tennessee, and operated same as lessee until July 23, 1893, when by mutual consent the lease was terminated, and the operation of the railroad resumed by the lessor company. The liability of the Newport News & Mississippi Valley Company to the appellees was incurred while operating said railroad as lessee. After the termination of said lease, the Newport News & Mississippi Valley Company disposed of a large amount of personal assets, consisting of bonds, stocks, equipment, material, etc., to the Illinois Central Railroad Company, realizing therefrom in the neighborhood of $1,000,000, which proceeds were at once paid over to C. P. Huntington in discharge of large claims held by him against said company. Certain other property, of no great value, situated in Kentucky, was also conveyed to certain officials of the corporation to protect them against loss as sureties upon various official bonds executed by the corporation in pending legal proceed-ings. These dispositions of property were followed by a stockhold-ers' meeting held on March 16, 1894, at New Haven, Conn., where it was unanimously voted that the affairs of the company should be wound up. March 20, 1894, C. P. Huntington, a very large stock-holder of said company, applied to the superior court, sitting at New Haven, Conn., for the appointment of a receiver to take charge of the assets of the company according to the provisions of a stat-ute of the state providing for the winding up of domestic corpora-tions. Appellant was accordingly appointed temporary receiver, and on April 13, 1894, he was appointed and qualified as permanent re-ceiver. On the 14th of April, 1894, F. H. Davis, the president of said company, made to Zacher a general deed of assignment, con-veying to him, as receiver, all of the property of the corporation, wherever situated. This deed was ratified by vote of the directors of the corporation on May 8, 1894. On the following day it was acknowledged for registration and delivered to Zacher as the deed of the corporation. The appellee James E. Crouch levied his at-tachment May 1, 1894,—a date subsequent to Zacher's appointment as receiver, but antecedent to the delivery of the deed of assign-ment made to him by the debtor corporation. The attachment of the Fidelity Trust & Safety-Vault Company was not levied until May 11, 1894,—a date subsequent to the deed of general assign-ment above referred to. The court below held that Zacher was not an assignee under such a voluntary assignment as should be en-forced against creditors pursuing their remedies under the law of Kentucky; that state being the actual situs of the fund which the receiver was seeking to recover and remove to Connecticut. The

attachments were both sustained. From this decree, Zacher has appealed.

The questions arising upon the appeal from the decree sustaining Crouch's attachment are somewhat different from those involved in the appeal from the decree sustaining the attachment levied by the Fidelity Trust & Safety-Vault Company. Neither the Connecticut statute under which the Connecticut court was proceeding, nor the order of the Connecticut court appointing Zacher, undertook to vest in the receiver the title to the corporate assets. Until the general deed of assignment subsequently made by the corporation became effective by delivery, Zacher was the mere officer of the court appointing him, holding possession of the assets of the corporation within its jurisdiction, and subject to its order and direction. Whether the proceeding under which he was appointed was one in invitum or not is not a controlling circumstance. It was a judicial proceeding, and its utmost effect was to place the property of the corporation within the jurisdiction of the court in custodia legis. Appellant was the mere hand of the court which appointed him, having no powers except such as were conferred upon him by the order of his appointment, and the course of procedure of the court under its general powers as a court of equity, and its special powers under the statutes of the state. Having no extraterritorial power or authority, a receiver cannot sue in a court of another jurisdiction except by comity of the court whose assistance he invokes, and his authority will not ordinarily be recognized to the prejudice of creditors pursuing their remedies under the law of the situs of the property he seeks to recover. Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Security Trust Co. v. Dodd, Mead & Co., 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835; Commercial Nat. Bank v. Motherwell Iron & Steel Co., 95 Tenn. 172, 31 S. W. 1002, 29 L. R. A. 164; Sands v. E. S. Greeley & Co., 31 C. C. A. 424, 88 Fed. 130; Upton v. Hubbard, 28 Conn. 274; Johnston v. Rogers' Receiver (Ky.) 43 S. W. 234; Zacher v. Safety-Vault Co., 59 S. W. 493; and Weedon v. Association, 59 S. W. 758, decided by the Kentucky court of appeals December, 1900, and not yet officially reported. The cases of Zacher v. Safety-Vault Co. and Weedon v. Association, cited above, are very late utterances of the Kentucky court of appeals, and are authoritative announcements as to the circumstances under which a foreign receiver or assignee will be aided in the recovery of the debtor's property situated within Kentucky, under the rule of comity and policy recognized by that state touching foreign assignments and foreign receivers. The situs of the property which the appellant claims in his character as receiver and assignee is in the state of Kentucky. The limitations under which a foreign receiver or assignee may enforce a claim to the property of the nonresident debtor are those prescribed by the law and policy of the state of the situs of the property claimed. Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Reynolds v. Adden, 136 U. S. 348, 351, 10 Sup. Ct. 843, 34 L. Ed. 360; Security Trust Co. v. Dodd, Mead & Co., 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835. Inasmuch as Crouch's attachment was actually levied before Zacher had any other title, authority, or right

than that conferred by the order appointing him receiver, it follows that he acquired a lien which was not displaced by the subsequent general assignment made to Zacher by the debtor corporation, whether that assignment be regarded as voluntary or involuntary.

Different considerations apply to the attachment levied by the other appellee, the Fidelity Trust & Safety-Vault Company, whose attachment was not levied until after the deed to Zacher of May 9, 1894. For appellee it has been urged very strenuously that the deed conveying to Zacher the entire corporate property was a voluntary conveyance for the equal benefit of all the creditors of the corporation, and as such was in accord with the policy of Kentucky, and would be supported by the courts of that state against all subsequent liens under the attachment laws of that state. In Coflin v. Kelling, 83 Ky. 649, 656, the supreme court of Kentucky upheld a voluntary assignment for the equal benefit of all the assignor's creditors made in Ohio against attachments by local creditors of property in that state levied subsequent to the assignment. Pryor, J., in delivering the opinion of the Kentucky court, among other things, said:

"The courts of this state will recognize the right of the owner to dispose of his property by contract, and will uphold such right, although made in another jurisdiction, when not against the policy of our law, or plainly injurious to the rights of the resident creditor."

After showing that this was the prevailing rule in the courts of other states, the learned judge said:

"A settled rule affecting the assignment and transfer of personal estate prevailing in our sister states, and adopted or followed in this state, can work no hardship on our citizens. The creditor may be put to the inconvenience of presenting his claim to the assignee for payment in a different jurisdiction, but the same rule would apply to the creditor in Ohio, where the assignment had been made in Kentucky. The only question in this case, it seems to us, is, would the assignment made in Ohio have been valid and enforced in this state if made here? If so, a subsequent attaching creditor should not be allowed to defeat the claim of the assignee. There is nothing in this case inconsistent with the line of policy adopted in this state upon this subject, either in the statute of assignments or the judicial decisions under it. All of the debtor's property is transferred and conveyed to the assignee for creditors without any preference or priority. A bond is certified to have been executed, and the assignee has qualified; and, while the contents of the bond are not made to appear, the court will presume that it is such a bond as is usually required of assignees. What the costs of the proceeding in Ohio may be, or the character of the exemption laws in that state, we are not informed; nor is it necessary that this court should be before enforcing the claim of the assignee. No complaint is made that the Kentucky creditor will not obtain his pro rata portion of the proceeds of the debtor's property, or, rather, no fact established that would authorize this court to assume that the property is to be wasted in costs, or made the prey of too liberal exemption laws."

The proceedings of the superior court of Connecticut, under which Zacher was appointed receiver, were authorized by section 1942 of the General Statutes of 1888, which is in these words:

"The superior court in the county in which any corporation, organized under the laws of this state, has its principal place of business, may, as a court of equity, on the application of any of its stockholders, wind up its affairs and dissolve it, if said court shall find that said corporation has voted to wind up its affairs, or abandoned the business for which it was organized, and has

thereafter neglected within a reasonable time or in a proper manner to wind up its affairs and distribute its effects among its stockholders; and for this purpose may, if it deem it necessary, appoint one or more receivers of the estate of said corporation, and limit a time for its creditors to present their claims to such receivers, and direct public notice thereof to be given; and all claims not presented within such time shall be barred. Said, receivers shall allow all just claims against said corporation, collect its debts, sell its property, and convert the same into money, and report their doing to said court as it may direct. Said court may, on complaint of any person aggrieved by such doings, grant such relief as the nature of the case may require; and it may make such orders as to the payment of debts and distribution of the effects of said corporation as may be just and conformable to law."

The application for the appointment of a receiver was made by C. P. Huntington. His application immediately followed the unanimous determination of the stockholders to wind up the affairs of the corporation. No resistance was made by the company to the application. Still the appointment was one which the court might make or not, in its discretion. The proceeding was in form and substance a judicial proceeding, though conducted with the seeming consent of all parties. The general assignment followed the permanent appointment of Zacher. It was not made under any order of the court, nor as a requirement of the statute under which the court was proceeding. It was a conveyance to Zacher "as receiver," and recited his appointment. Its effect was to vest him with the title to the corporate assets, subject to the purposes of his appointment as receiver, and subject to the orders and decrees of the court which had appointed him. The statute under which the court was proceeding was not technically an insolvent statute. It was one which provided a mode by which domestic corporations might be wound up and dissolved. Insolvency was not a condition to the exercise of jurisdiction under it. The statute contemplates that the property of the corporation shall be sold, its debts paid, and the surplus, if any, divided among the stockholders. If the assets are deficient, their equal distribution, subject only to equitable preference, is plainly implied and required. Should the proceeding, including the deed of assignment, upon all the facts of the case, be regarded as a purely voluntary proceeding, and the assignment as a voluntary general assignment for the equal benefit of all creditors, and therefore to be enforced by the courts of Kentucky against the claims of local creditors pursuing remedies under local statutes?

The insistence of the learned counsel for appellant Zacher is that the whole proceeding was voluntary, and that the assignment should be regarded as a general voluntary assignment, good under the law and policy of Kentucky. In support of this they cite us to the cases of Coflin v. Kelling, 83 Ky. 649, and Ward v. Manufacturing Co., 71 Conn. 345, 41 Atl. 1057. In Ward v. Manufacturing Co. a receiver had been appointed for a Connecticut corporation in a proceeding instituted under an act passed in 1895,—an act substantially identical with section 1942 of the General Statutes of 1888. It appeared in that case that the court appointing the receiver had directed the corporation to make a general deed of assignment to the receiver, and that in pursuance of such order such a deed had been made. Upon evidence that the whole proceeding had been

voluntarily instituted and conducted by the corporation, the court held that the deed operated as a general voluntary assignment, and as such was good under the laws of New York, and that a New York creditor who had attached and sold property situated in New York must account for the full value of the property so appropriated, before being allowed to share in the dividends paid by the receiver. The case is not, however, controlling, for the reason that the courts of the actual situs of the property sought to be reached by a foreign assignee or receiver must for themselves determine whether the particular transaction is or is not such a voluntary assignment as will be upheld under the law and policy of the state. Reynolds v. Adden, 136 U. S. 348, 354, 10 Sup. Ct. 843, 34 L. Ed. 360; Security Trust Co. v. Dodd, Mead & Co., 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835. The matter presented by this appeal does not seem open for independent consideration. The appellant asserted his title to another fund under the jurisdiction of one of the local courts of Kentucky against a creditor whose attachment was subsequent to the deed of assignment under which he then and now claims. The matter came ultimately before the Kentucky court of appeals, which held that Zacher was not an assignee under a voluntary general assignment, and that he could not recover the property of the corporation, to the prejudice of creditors who were pursuing their remedies under the local law. The assignment in question there is the assignment involved here, and the facts in that case the facts of the case before us. The opinion of the Kentucky court has been announced pending consideration of this case, and is as yet officially unreported. The case was that of Zacher v. Fidelity Trust & Safety-Vault Company cited heretofore. After stating the material facts, the Kentucky court said:

"It therefore only remains for us to determine whether the transfer made to appellant was equivalent to a common-law or voluntary assignment for the benefit of all the creditors, or was it in the nature of a proceeding in invitum? It is the contention of appellant that he is nothing but a voluntary assignee; that the Connecticut proceeding under which he was appointed is simply a statutory provision for voluntary assignment of insolvent corporations for the benefit of all their creditors equally, while it is the contention of appellee that the whole proceeding in Connecticut is a scheme to prefer certain creditors of the corporation outside of this state to the prejudice of the local creditors. To support this contention they point to the fact that nearly all of the assets of the company before the assignment were turned over to the large stockholders and officers to pay and protect liabilities due them, to the prejudice of local creditors, and that no steps have been taken by appellant, as receiver, during all of the years that have intervened since his appointment, looking to the recovery of this property for the benefit of all of the creditors. Appellant himself has not testified, and the testimony of the president and secretary of the company and of the attorney of appellant, who was also the attorney of the defunct corporation, most certainly discloses the most extraordinary disregard of the rights of the creditors of this corporation living in the state of Kentucky. And we think that the proceeding under which appellant was appointed to take charge of the assets of the liquidating corporation was clearly in invitum, both in their form and character. The relief was sought by a stockholder and creditor, the corporation was made a defendant, the judgment upon its face did not purport to be a consent judgment, and this court will not inquire whether the corporation itself instigated the granting of the relief sought by the creditor who instituted the suit. There was in fact no voluntary or common-law assignment, for the benefit of all the cred-

itors equally, made or authorized by the corporation, such as this court has held to be binding upon creditors resident in this state. On the contrary, we think the proceeding in Connecticut was a statutory one for winding up the affairs of an insolvent corporation under the laws of that state, and is operative as to property in Kentucky only so far as the courts in this state choose to respect it, and that so far as appellant, as receiver or assignee, took title to such property, he took it subservient to appellee's attachment."

Where the question is as to the validity of a particular foreign assignment under the law of Kentucky, we ought not to hesitate to yield to the authority of the highest court of that state, when we find that upon an identical record between the same parties it has held the assignment in question not such a voluntary assignment as by the comity of that state is valid as against the subsequent lien of local creditors. The decision of the Kentucky court is one of blended law and fact, and so far concerns the purely local policy of that state that we are not disposed to refine in respect to how far we might reach a different conclusion upon the same facts and yet administer the law of the state. It would be a scandal upon the administration of justice if two co-ordinate courts, administering the same law, should reach a different conclusion upon the same facts; and more especially would this be so in respect of a matter in which the highest court of the state whose comity and policy was involved had led the way by a decision between the same parties in respect to another fund embraced in the same assignment. Neither do we think that creditors of the Newport News & Mississippi Valley Company are bound by the Connecticut statute providing for the winding up and dissolution of Connecticut corporations, as provided by section 1942 of the Connecticut General Statutes of 1888, to such an extent as to be prohibited from availing themselves of the remedies afforded them by the law of Kentucky against property of such corporations situated in Kentucky.

The case of Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337, is plainly distinguishable. Relfe appeared in the Louisiana court, not as a receiver appointed by a court of Missouri, "but as the statutory successor of a corporation which the court had in a legitimate way dissolved and put out of existence." He was in fact the corporation itself, for all the purposes of winding up its affairs. Neither the Connecticut statute of 1888, nor the decree appointing a receiver, dissolved the Newport News & Mississippi Valley Company, or vested in the receiver the property and powers of that corporation. He was an ordinary receiver, appointed as a step in a judicial proceeding for the ultimate winding up and dissolution of the corporation. No such consequence attached to his appointment as resulted from Relfe's appointment under the very peculiar Missouri statute involved in Relfe v. Rundle.

Finally it has been urged that the appellee James E. Crouch is estopped to deny Zacher's title to the fund in controversy because he subsequently filed his claim in the Connecticut proceeding. But Crouch did not thereby intend to abandon his lien, nor did he cease to assert his right to appropriate the fund in Kentucky to the satisfaction of his claim. His right to file his claim for a dividend out of the Connecticut case was resisted by the receiver upon the ground

that he was at the same time endeavoring to subject assets in Kentucky, and the court was for this reason moved to strike his claim from the files. This motion was denied, and the claim is still pending, undisposed of. The ground upon which the Connecticut court refused to repel Crouch is not stated, but the ruling was probably made upon the authority of Ward v. Manufacturing Co., 71 Conn. 345, 41 Atl. 1057, where a New York creditor of a Connecticut corporation was permitted to receive a dividend upon the balance of his claim after deducting the value of certain property situated in New York, which he had there attached and sold after knowledge of the appointment of a receiver in Connecticut under section 1942 of the Connecticut General Statutes of 1888, and after a conveyance had been made by the corporation to the receiver. We see no reason why Crouch may not in the Connecticut case likewise obtain a dividend upon so much of his claim as shall remain unsatisfied upon the conclusion of his effort to reach the assets of the corporation open to him under the law of Kentucky. The estoppel, if any estoppel there be, is one operating upon him in the Connecticut proceeding. The filing of his claim there was not an election to abandon the lien acquired under the law of the situs of the property attached, as it is not necessarily the assertion of any inconsistent right. The decree of the circuit court must be affirmed.