Swayne, District Judge.
This is a motion by the complainant company for an attachment against the defendant company and its officers *938 for a contempt and violation of the temporary restraining order of July 6, 1892, and for the violation of the order made appointing Mason Young receiver on August 4, 1892. This proceeding was commenced by petition filed in this court, November 7, 1892, a copy of which was served upon C. C. Deming, vice president of the defendant company, in Jersey City, N. J., November 12,1892, and a notice of the petition was served on defendant’s counsel here in Jacksonville some days previous to the hearing. The matter was argued by both parties on the 18th of November, 1892, and taken under advisement by the court. No answer was offered to the petition. No extension of time was requested for privilege to file aii answer, although it was argued at the time by the counsel for the respondent that the time was not sufficient in which to appear and answer. By the rules of New York, in which said vice president Deming resides, he would have been allowed four days in which to answer. By the record here he had six days in which to do so, which the court holds was ample time for that purpose. It further holds that, while a petition and rule for attachment are not the only methods which may be pursued in an action for contempt, it is a proper method, and in this case gave the defendant railroad company and Mr. Deming all of the time and privileges that they would have been entitled to under a rule to show cause. He was served with an exact copy of the petition containing the specific charges made against him, and he had six days in which to make answer thereto or ask for additional time in which to make said answer. As the court understands his position, he did neither, but rested his defense to the motion on technical objections to the complainant’s method of procedure. He did come in, however, at the eleventh hour, on the morning on which this opinion was delivered, and asked that, if it should be against him, he might have further time in which to answer.
This, therefore, being a proper method of proceeding, the defendant company and its vice president, Mr. Deming, being both in court, with ample notice of the charges against them, and with ample time in which to answer the same, and having failed to do so, it remains to be inquired whether there is evidence before the court to sustain the charges in the petition. That portion of the temporary restraining order claimed to be violated reads as follows:
“That the said defendant railway company, its officers, agents, attorneys, servants, and employes, are hereby enjoined and restrained from remitting, sending, or removing in any manner whatsoever any of the incomes, tolls, or revenues of the said defendant company from the jurisdiction of this court, either to its treasurer in New York or to any other officer or person whatsoever. ”
It appears by a voucher produced before the court at this hearing that the defendant, the Jacksonville, Tampa & Key West Railway Company, on July 11, 1892, paid to Cooper & Cooper, counsel, the sum of $2,500. It further appears that this money was paid on the authority of Mr. C. C. Deming, vice president, approved by Mr. R. B. Cable, general manager, and by T. M. Day, Jr., attorney, and audited by Mr. *939 J. E. Starke, general auditor. It is claimed in this action that such-payment was a willful violation of the order of July 6,1892, and it rendered all the parties who are responsible therefor guilty of contempt in. willfully disregarding the order of this court. The fact that the managers and directors of a corporation, charged with fraud and mismanagement of that corporation, should take the money of the corporation* with which to defend themselves against that charge, presents certain novel features for the consideration of the court, the decision of which-had perhaps best be reserved until the final termination of the original suit. The court, therefore, at this time expresses no opinion upon the-propriety or impropriety of the use of that $2,500 which it appears has-been made.
The order of August 4, 1892, by which Mason Young was appointed-receiver of the Jacksonville, Tampa & Key West Railway Company, contained the following language:
“And it is further ordered that the said defendant railway company, its-officers and agents, and all persons who may have possession of any of the said railroad properties or appurtenances or rights and privileges thereof, deliver over to the said receiver all and every part of the properties, interests, effects, moneys, receipts, and earnings, and all the books, vouchers, and papers touching the operation of the said railroads or either of them, and all books of account and vouchers touching or relating to the moneys, finances, and assets of the said defendant company, including the stock books and stock, ledgers of the said defendant company.”
It is contended upon the part of the defendant that the motion does not specify any person by name whom it is sought to attach. The-motion for attachment is against the defendant company, the Jacksonville, Tampa & Key West Railway Company, and its officers. It is-known to the court, as well as to all parties concerned in this litigation,, that Mr. C. C. Deming, who was served with copy of this petition on. November 12, 1892, was the vice president of the defendant company, and one of the parties against whom the orders of July 6 and August. 4, 1892, were made. He appeared in court in person at the hearing of that cause, not only as vice president, filing an affidavit therein, but also-as counsel, taking an active part in the proceedings. The court knows him to be a proper party, and, further, that he and bis counsel are aware of the same fact, and, if it becomes necessary, will have no difficulty in making a proper order for the attachment from the record.
Further objections are made by the defendant that Mr. Pennington was not a properly authorized agent of the receiver to demand the books- and other property of the defendant company; and yet it appears that Mr. Deming and his counsel treated with him as such agent, and failed to make any such objection up to the date of this argument. It is evident, however, to the court that, at the time the demand was made for the-books and property, Mr. Pennington was a proper agent to make that demand. The principal objection or argument used by defendant’s counsel at this hearing, to clear his client from the charges brought against him, is that the language of the order of August 4th is not clear; that *940 there was no order in it for turning over hooks of former companies; that there was no allegation in it of any particular books, such as bills payable or the New York cash book, or that they were in possession of the defendants. The court does not understand that there is any reason in such objections, or that there is any possibility of drawing such an understanding from the construction of the language of the order. There is no reason why the words in the order, “all the books, vouchers, and papers touching the operation of said railroad,” should be construed by Mr. Deming or his New York attorney to be limited to mean those only touching the future operation of the railroad, nor that the order for “all books of account,” etc., should be limited to those that the receiver should happen to demand or be able to guess that existed, and that he should be required to show in whose individual hands each separate book might be found at the time of making the demand. There is nobody in this case who is better aware than Mr. Deming himself that the books that were wanted, and that were intended by the order to be delivered, and which were so ordered by the order of August 4, 1892, were the books that would enable the receiver to determine whether the charges against the officers of the Jacksonville, Tampa & Key West were true or false. Those books, of course, included all that related to the previous history of the defendant corporation, and all the records that went to compose it, and all transactions which took place between them; and while the court does not now say that the refusal to deliver those books to the receiver, and the effort made to thwart the order for their delivery, was made for the purpose of preventing investigation and covering up the frauds alleged, yet that must necessarily be one of the conclusions to which such attempt must force every one.
It is true there is nothing in the order about the delivery of the seal of the company, and yet the order is very explicit and full when it says, “all and every part of the properties, interests, effects, moneys, receipts, and earnings,” etc. There can be no doubt in the mind of any one for one moment that that order covered the delivery of the seal, and it should have been promptly delivered on demand to the receiver or his agent.
The showing made by Mr. Pennington in his affidavit that it was the purpose of Mr. Deming to delay and prevent the delivery of the company’s books to- the receiver as much as possible, notwithstanding the promise to comply with the order of the court made by said Deming, and the delays that were occasioned by him and his attorney from the 15th of August, 1892, for some weeks thereafter, indicate that purpose beyond all question. • His action in collecting the money under the contract for carrying the mail, after the appointment of the receiver, and the deposit of it in a bank under the name and to the credit of the Jacksonville, Tampa & Key West Railway Company, when it should have been paid to the receiver in the first instance, and his efforts to dictate to what the receiver should apply that money indicate a disposition on his part to interfere with the duties of the court’s officer, and renders him clearly guilty of contempt in that matter.
*941 The judgment of the court, therefore, is that the parties herein charged are guilty of willful contempt in violating the previous orders ©f'the court, and they are so adjudged. In view of the fact, however, that time has been asked this morning in which to file further answer, attachment will not issue at once, but 10 days will be allowed the parties in which to purge themselves of contempt, if they desire to do so. Contempt, however, being a criminal action, and personal service being required in each case, Mr. Deming, being the only individual who has been personally served, is the only one against whom attachment can issue at present.