BIBBER–WHITE CO. v. WHITE RIVER VALLEY ELECTRIC R. CO.

(Circuit Court, D. Vermont. March 23, 1901.)

1. RECEIVERS—INTERFERENCE WITH ASSETS—RELIEF BY PETITION.

Relief from interference with assets belonging to a receiver appointed by the circuit court may be obtained by petition, instead of by bill against the wrongdoer, whether they have ever been in the receiver's possession or not.

2. SAME—ASSETS OF RAILROAD COMPANY—SUBSCRIPTIONS FOR BUILDING ROAD.

A town voted aid to a proposed railroad, conditioned on aid from other towns, which was partly subscribed by individuals, payment to be made when the road was completed, and a party agreed in writing to act as trustee in collecting the individual subscriptions for the company, but the subscription papers were never committed to him. He collected nothing, and nothing accrued on the subscriptions before a receiver was appointed for the railroad company. Before the latter's appointment, however, the vice president, who was also a member of the executive committee for building the road, indorsed the trustee's agreement with an order to pay the amount specified therein to T., who was active in furthering the enterprise, and had performed some services and made some expenditures about it after the company was organized. *Held*, that conceding that the vice president was authorized by the executive committee to indorse bills and checks, and to pay for labor, etc., and that they agreed T. should have the subscriptions for his services and disbursements, he could not retain the subscription papers without leave of court, as against the receiver, as the agreement was wholly executory, and his claim should be submitted to the court, and besides they might be important to the receiver in connection with the vote of the town first referred to.

In Equity.

E. L. Waterman, for receivers.

W. B. C. Stickney, for petitionee.

WHEELER, District Judge. The town of Stockbridge appears to have voted $10,000 to aid in the construction of this railroad, provided: "Sixth. That the people of the towns of Pittsfield, Hancock, and Granville shall raise in aid of said railroad, either by appropriations of their several towns, or by individual subscriptions, or in both ways, a like sum of $10,000." The town of Pittsfield appears to have voted $3,000, and the town of Hancock $2,000, in compliance with that vote, and 134 individual subscriptions,—one of $500, and the others of from $5 to $200, and amounting to $5,000,—appear to have been made upon six different papers, promising to give these various sums, respectively, without otherwise naming any payee, for the purpose of aiding in the construction of the railroad as required by the vote of the town of Stockbridge, to be paid upon the completion and equipment of the road; and Charles W. Brigham appears to have signed, sealed, and delivered to the railroad company a written instrument which, after reciting the passing of these votes and the making of these subscriptions, proceeded:

"Now, therefore, I, the said Charles W. Brigham, agree to and with the said White River Valley Electric Railroad Company, its successors and assigns, to act as trustee for the purpose of collecting said sum of five thousand dollars from the subscribers to said fund, and to use my best endeavors to collect the same, and do promise and agree to and with said railroad company, for the purpose of inducing it to proceed with its construction of the proposed line

as named in said votes and resolutions, to turn over to said corporation the said sum of five thousand dollars, or such part thereof as I shall be able to collect, when said railroad company shall have performed all things entitling it to receive from said town of Stockbridge the amount which said town of Stockbridge has voted to pay in aid of said road."

H. W. Burgett was vice president of the railroad company and one of an executive committee of three for building the road, and John R. Tupper appears to have been active in furthering this enterprise, and to have performed some services and made some expenditures about it after organization of the company. Burgett made upon Brigham's agreement this indorsement: "Pay to John R. Tupper, or his order, the amount specified in this agreement. H. W. Burgett, Vice President," and delivered it to Tupper, who indorsed and delivered it to the National White River Bank. The receiver of the railroad company, its road in process of construction and its assets, was appointed in this cause February 20, 1900. These individual subscriptions appear to have remained in the hands of those, or some of those, who had circulated them, till after that time, and none of them to have ever been in the hands of Brigham except one that he had circulated. Tupper appears to have afterwards claimed them, they were sent to the bank, and in the fore part of December, 1900, were put for him, with the Brigham agreement, which had been indorsed: "Pay to the National White River Bank, or its order, the amount specified in this agreement. John R. Tupper,"—with the securities of that bank; and he has denied them to the receiver.

This petition is brought against Tupper for relief from this interference with these subscriptions as pertaining to assets of the company belonging to the receiver. He has answered the petition and filed affidavits, and the petitioner has cross-examined the affiants, and has filed affidavits taken subject to cross-examination. A preliminary objection is made to this form of proceeding by petition instead of by bill, which is to be considered. In Ex parte Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689, the proceeding under examination was by petition such as this. Concerning it Mr. Chief Justice Fuller said:

"That power exercised was the power to protect the property in the custody of the court from invasion, and, in order to sustain the receiver's application, the ordinary grounds of equity interposition were not required to be set forth;" and, "No rule is better settled than that when a court has appointed a receiver his possession is the possession of the court for the benefit of the parties to the suit and all concerned, and cannot be disturbed without leave of the court; and that, if any person without leave intentionally interfere with such possession, he necessarily commits a contempt of court, and is liable to punishment therefor."

These principles are not much disputed by the counsel for the petitionee, but are said not to be applicable here because the receiver did not have any possession of these subscriptions to be interfered with; and the petitionee claimed them as of right. These subscriptions were evidence of dues to the railroad company to mature on the completion and equipment of the road, and apparently belonged to that company, and when the receiver was appointed, to him, for collection on completion and equipment of the road.

107 F.—12

The great number of subscribers makes the subscription papers, without which some and perhaps many of the names might not be known, and which would be understood to be payable on presentation, necessary for collection. The getting of these papers away from those who had them, and who neither had nor claimed any interest in them, and putting them beyond the reach of the receiver, was a wrongful interference with his vested right to them. The petitionee did not have any possession before, founded upon any claim of right or otherwise. The proceeding in Vermont & C. R. Co. v. Vermont Cent. R. Co., 46 Vt. 792, against interference with the rights of a receiver of the railroad in Vermont by attachment of debts in Massachusetts, was a summary one like this, and in it Royce, J., in respect to its scope, said:

"If any person claims a right paramount to the right of a receiver or manager, he must, before he presumes to take any steps of his own motion, apply to the court for leave to assert his right against the receiver or manager. Hawkins v. Gathercole, 1 Drew, 17; Randfield v. Randfield, 1 Drew & S. 314. This rule is not confined to property actually in the hands of the receiver or manager. The court will not permit any one, without its sanction or authority, to interrupt or prevent payment for any property which he has been appointed to receive, though it may not be actually in his hands."

The proceeding in American Const. Co. v. Jacksonville, T. & K. W. Ry. Co. (C. C.) 52 Fed. 937, was upon petition of the receiver, and the vice president of the company was adjudged guilty of contempt for collecting money under the contract for carrying the mail after the appointment of the receiver, and depositing it in bank to the credit of the company. These principles and cases well show that this is a proper proceeding for the redress of this unlawful interference with the rights of the receiver. The petitionee attempts to justify this conduct by showing that Burgett had authority from the executive committee to indorse checks and bills, and to pay for labor and expenditures, and that they agreed that he should have these subscriptions for his efforts, services, and disbursements. This would fall short of justifying this interference with the subscriptions, if made out. Brigham had no right to them and assumed none; he merely agreed to collect what he could, and pay over what he collected; they were not committed to him for that purpose, and he collected nothing. The order of Burgett, if he had authority to make it, to pay the amount specified to Tupper, carried nothing, for no amount accrued as specified before the receivership or ever. The agreement with the executive committee, if made, was wholly executory, and insufficient to warrant any interference with the subscriptions after the receivership without leave of court. If he had, or thought he had, any claim upon them, he should have applied to the court, and not have undertaken to help himself by getting them away from the reach of the receiver. They may be important to the receiver in connection with the vote of Stockbridge, and should be returned to the custody of the court, that they may be had for any proper purpose. This is all that is considered now with reference to these rights, any claim that the petitionee may have to them being left without prejudice to be applied for as he may be advised. This proceeding is continued to Fri-

day, April 5, at 2 o'clock, at chambers in Brattleboro, and time is given him till then to produce the subscriptions in court if he can, or show why if he cannot, and for further proceedings in respect to them and his interference with them as may seem meet.