## HORN v. PERE MARQUETTE R. CO. et al.

### (Circuit Court, E. D. Michigan, S. D. February 11, 1907.)

1. RECEIVERS—REMEDIES—SUMMARY PROCEEDING.

A receiver may proceed summarily by petition for a rule to show cause in the court by which he was appointed to require one not a party to the suit to pay over money belonging to the receivership which has come into possession of the respondent since the appointment of the receiver, and which is retained in defiance of the court's order sequestering the property and funds of the defendant, although the respondent claims a right to or lien upon the fund; his remedy in such case being by a petition in intervention setting up his claim. The rule would be otherwise, however, with respect to funds in the hands of respondent at the time the receiver was appointed, and which he claims adversely, which could only be recovered by the receiver by a plenary suit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 129.]

2. COURTS—JURISDICTION OF FEDERAL COURTS—DISTRICT OF SUIT.

Where a defendant corporation, sued in a federal court in a district of which neither complainant nor any defendant is an inhabitant, waives any objection to the place of suit by appearing and joining in complainant's prayer for a receiver, such waiver is conclusive upon third persons not parties, who cannot claim that the appointment of the receiver was without jurisdiction; there being the requisite diversity of citizenship to confer constitutional jurisdiction on the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 815.

Waiver of right as to district in which suit may be brought, see note to Memphis Sav. Bank v. Houchens, 52 C. C. A. 192.]

3. SAME—SUIT OF LOCAL NATURE—SCOPE OF RECEIVERSHIP.

A suit by a creditor of a railroad company to have its property, situated in different federal districts of the same state, administered for the benefit of all creditors, is one of a local nature which, under Rev. St.

§ 742 [U. S. Comp. St. 1901, p. 588], may be brought in either of such districts, and the appointment of a receiver therein is an equitable attachment of all property of the defendant within the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 809.]

**4. RECEIVERS—TITLE TO PROPERTY—DATE OF ATTACHMENT.**

The qualified title of a receiver to the property he is directed to take and hold dates from the time of his appointment, and actual seizure by him is not necessary to prevent the attachment of rights or liens thereafter; and, if the order of appointment requires him to give bond, his title when so qualified relates back to the date of appointment, and cuts off all intermediate rights.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 126.]

**5. CREDITORS' SUIT—QUALIFICATION OF CREDITOR TO BRING—WAIVER OF OBJECTION.**

The objection that a creditor's bill was filed by a single unsecured creditor who had no judgment, and claimed no lien, is waived and stands as though it never existed where the defendant voluntarily appears, confesses the debt, admits its insolvency and joins in the prayer for a receiver, and such objection cannot be thereafter raised by other creditors who were not parties to the suit as brought, but are subsequently brought in or are permitted to intervene.

**6. RECEIVERS—TIME OF APPOINTMENT—ORDER MADE AT CHAMBERS.**

An order appointing a receiver signed by a circuit judge at chambers in another district on presentation to him of bill and answer which have not been filed, to take effect when the pleadings and order are filed with the clerk becomes effective on such filing, any delay in transcribing the order upon the records or in the qualification of the receiver being immaterial.

**7. SAME—POWER TO APPOINT—JUDGE AT CHAMBERS.**

A federal judge, in the exercise of his general equity powers as a chancellor, and those prescribed by Rev. St. § 638 [U. S. Comp. St. 1901, p. 519], and equity rule 3, has authority at chambers to make an order appointing a receiver in a pending cause, or on a bill and an answer by the defendant joining in the prayer for such appointment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 38; vol. 29, Judges, § 126.]

**8. JUDGES—CIRCUIT JUDGES—CHAMBERS—TERRITORIAL LIMIT OF JURISDICTION.**

A circuit judge of the United States may do chambers business at any place within his circuit without regard to the particular district in which the cause is pending.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Judges, §§ 109, 110.]

**9. RECEIVERS—EFFECT OF APPOINTMENT—LIEN OF BANK ON DEPOSITS RECEIVED AFTER RECEIVERSHIP.**

A railroad company kept a general account, subject to check, in a bank, which also held notes of the company payable on demand. From time to time the treasurer and agents of the company remitted money to the bank for deposit in such account, and certain of such remittances were received by the bank after the appointment of a receiver for the property of the company in insolvency proceedings. *Held*, that such sums were property of the receiver, and the bank acquired no lien thereon which entitled it to apply them on its notes.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 117.]

In Equity. In re intervening petition of Judson Harmon, receiver, and answer of the State Savings Bank.

Edward Colston and F. W. Stevens, for receiver.

Walker & Spalding and H. M. Campbell, for State Savings Bank.

LURTON, Circuit Judge. At the outset I must make my acknowledgments to the learned counsel who have appeared in this case. Their assistance in investigating the numerous and interesting questions which are herein discussed has been unusually profitable to me, and I trust will tend to the better understanding of several mooted questions which concern matters of interest touching the appointment and authority of receivers.

The matters now to be considered arise upon an intervening petition filed by Judson Harmon, as receiver of the Pere Marquette Railroad Company, and the answer of the State Savings Bank, a banking corporation of the state of Michigan, carrying on a general banking business at Detroit. The petition, in substance, avers that the petitioner had been appointed receiver of the Pere Marquette Railroad Company, under a bill filed at Grand Rapids, in the Western District of Michigan, at 9:30 o'clock a. m., December 5, 1905, and also under an ancillary bill filed at Detroit, in the Eastern District of Michigan, on the 8th of December, 1905. The contention of the petitioner is that, as to the property and assets of the Pere Marquette Railroad Company within both Michigan Districts, the appointment of the petitioner as receiver became effective at least from 9:30 o'clock a. m., December 5, 1905, that being the time of the filing of the original bill at Grand Rapids; petitioner having given bond simultaneously with his appointment. By this order the petitioner was appointed receiver of the entire Pere Marquette System of railroads, its rolling stock, property and assets of every kind wherever situated, including its books of accounts, bills receivable, choses in action, bonds, notes, stocks, moneys and valuables, and directed to take immediate possession of the same, and to operate the said railway, and hold possession of all its said properties for the benefit of whomsoever might be entitled, and subject to the orders and direction of the court. By the same order, the corporation, and all its agents and employés, "and all other persons," were required to turn over and deliver to the said receiver all property held by them for the said company upon demand of the said receiver, and all said officers and agents, and all other persons were enjoined and restrained from interfering in any way with his possession or management of same. The petition then avers that prior to the appointment of the receiver the Pere Marquette Railroad Company had kept an ordinary deposit account with the defendant bank against which it was accustomed to check; that from time to time the agents of said company, under its direction, made deposits of moneys received in the conduct of its business at many points within the state, and that the treasurer of said company, whose office was in Cincinnati, was also accustomed to transmit funds to the defendant bank subject to check. At the close of business on December 4, 1905, there was on deposit to the general credit of the said company $29,166.04. It is then averred that, after petitioner's appointment took effect, deposits sent by express to said bank were received as follows: December 5, 1905, remittances from agents, $2,625.88; December 5, 1905, remittances from treasurer, $29,722.63; December 6, 1905, remittances from agents, $4,811.46; December 7, 1905, remittances from agents, $3,272.21; December 8, 1905, remittances from agents, $2,892.21. At the date of this appointment the said

railroad company was indebted to the said bank by two notes, dated May 1, 1905, each for the sum of $50,000, and payable on demand. It is then averred that after the said appointment had been made, and with knowledge of the fact, the said bank applied the said sums so deposited to the credit of said railroad, to the payment of said obligations, and, though requested so to do, has failed and refused to pay such funds over to petitioner, thereby disobeying the order and direction of the court and in obstruction to the receiver's duty and obligation, and has thereby committed a contempt. The prayer was for a rule requiring said bank to show cause why it should not be required to pay into the hands of the petitioner the funds so withheld, and why it should not be punished for contempt. The bank so made a defendant, answered and set up its right to apply such deposits in payment of the debt of the railroad company upon the demand notes so held by it, and that it had made this application as the funds came in, and with knowledge of the receivership.

1. Objection is made to the right of the receiver to proceed by an intervening petition against the defendant, and, it is said, that he should have sued at law or some other independent suit. This objection, if tenable at all, should have been made by plea, demurrer, or motion. It was not. The defendant came in and answered to the merits. So far as the petition seeks to recover funds actually in the hands of the defendants at date of his appointment, against which a lien in good faith is asserted, the receiver could not have proceeded summarily if objection had been taken in time. The bank might well say:

"As to that fund, I claim adversely and demand that you proceed in the ordinary way to try the question whether my prior possession can be rightfully disturbed by an order in a case to which I was not a party." Wheaton v. Daily Telegraph Co., 124 Fed. 61, 59 C. C. A. 427.

But as to so much of this fund as was actually in possession of the defendant bank at the close of business on December 4, 1905, the receiver has conceded the right of the bank to apply it upon the indebtedness of the railroad company to the bank. As to the deposits made after the appointment of the receiver, a very different question arises. If, as claimed, the deposits made on December 5, 1905, were made after they had been sequestrated or equitably seized, the appropriation by the bank to the payment of its own claim is a claim to hold and appropriate same in defiance of the receiver and in disobedience of the order placing him in possession of all the assets of the railroad company. The right to maintain such an intervening petition does not depend upon whether some actual manual possession by the receiver has been disturbed. If the funds in question did not come into the actual possession of the bank prior to the appointment of the receiver, the conduct of the bank in preventing the receiver from obtaining the possession of that which he was appointed to receive is a defiance of the court's order. In such circumstances the bank should have intervened interesse suo and set up its right, for the possession of the receiver is but the possession of those having a right thereto, and would not defeat any title, claim, or right which it might have in the fund which it thus received after the receiver's title to the possession accrued. The distinction which I call attention to is noted in Vermont, etc., Co. v. Vermont Central R. R.

Co., 46 Vt. 792; Am. Const. Co. v. Jacksonville, etc., Ry. Co. (C. C.) 52 Fed. 937; and Bibber-White Co. v. White River Valley Electric Co. (C. C.) 107 Fed. 176. In respect to such deposits, a petition by the receiver to prevent such interference and to compel the surrender of the funds so seized is not bad practice, and does not deprive the defendant of a full and orderly hearing, and its rights are and will be as fully protected as in an independent suit. Such a proceeding was expressly sanctioned by the Court of Appeals of this circuit, in Lake Shore & M. S. Ry. Co. v. Felton, 103 Fed. 227, 43 C. C. A. 189. The opinion is authoritative in this circuit, and is a complete answer to any objection to the mode of proceeding adopted by the receiver, assuming that the defendant could raise such a question after answering to the merits.

2. It is said that the bill under which Harmon was appointed receiver was filed in the wrong district; that the principal offices of the railroad company are at Detroit in the Eastern District of Michigan, while the bill was originally filed at Grand Rapids in the Western District of the same state. Horn was not a citizen of Michigan. The Pere Marquette Railroad Company is a corporation of that state, and the other defendant, the Cincinnati, Hamilton & Dayton Railroad Company, is a corporation of Ohio. The district of Western Michigan was not the district of either the sole complainant, or of either of the only two defendants. That the defendant the Pere Marquette Railroad Company could have objected to being sued in the Western District may be conceded. But constitutional jurisdiction, through diversity of citizenship, existed, and this statutory right of being sued only in the district of which it was an "inhabitant," was a personal privilege which it might waive, and did waive, by its appearance and answer to the merits, and more distinctly in its joinder in the prayer for the appointment of a receiver. This waiver is equally effective as against this defendant. St. Louis R. R. Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659; Central Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup Ct. 286, 38 L. Ed. 98. In Central Trust Company v. McGeorge, cited above, the complainant was a New York corporation and the defendant a corporation of New Jersey. The bill was filed in the Circuit Court for the Western District of Virginia. The defendant appeared, as in this case, and consented to the appointment of a receiver. The validity of this appointment was contested by certain persons, claiming to be creditors and stockholders of the defendant company, both upon the ground that the appointment had been procured by fraud and collusion and that the court was without jurisdiction; the bill not having been filed in the district of either the complainant or defendant. But the court held that, both parties having consented, this objection was waived, and that this consent could not be overruled at the instance of creditors, not parties, who came in by intervention. In the later case of Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. ——, it was held that a defendant, sued in a state court in a district in which neither the plaintiff nor defendant was an inhabitant, might remove the case and rely upon that objection. The case was distinguished from Central Trust Company v. McGeorge upon the ground of con-

sent in the one case and no consent by the removing defendant in the other.

3. However important it may be to file an ancillary bill and obtain an ancillary appointment of a receiver when the property sought to be sequestrated lies partly in one state and partly in another, the same reasons do not apply with reference to property in the same state, but in two or more districts. Zacher v. Fidelity Trust, etc., Co., 106 Fed. 593, 45 C. C. A. 480, Booth v. Clark, 17 How. 322, 15 L. Ed. 164, and Great Western Mining, etc., Co. v. Harris, 198 U. S. 561, 25 Sup. Ct. 770, 49 L. Ed. 1163, bear upon the disability of a receiver appointed by a court of one jurisdiction to sue in the courts of another, and have no application when the question is, as here, as to the authority of a receiver appointed by a federal court of one district over property situated in another district of the same state. Federal courts of different states are undoubtedly foreign courts as to each other in as full sense as are state courts of different jurisdictions. But it has never been held, that a federal court of one district is a foreign court as to another federal court of the same state, and manifestly, this is not so when, by statute the process of a Circuit Court of one district may run in another district of the same state. That the jurisdiction of a particular Circuit Court is confined in general within the territorial limits of a judicial district may be conceded. Toland v. Sprague, 12 Pet. 300, 9 L. Ed. 1093; Barrett v. United States, 169 U. S. 218, 221, 18 Sup. Ct. 327, 42 L. Ed. 723. But this is so only to the extent that statutes creating and organizing such courts have defined and limited their jurisdiction. Since Toland v. Sprague was decided, there has been much legislation enlarging the limits within which powers and jurisdiction of Circuit Courts may be exercised. Thus, where there are several defendants, and some reside in one and some in another district of the same state, or when the suit is local in character and the "land or other subject-matter" lies partly in one district and partly in another, within the same state, the suit may be brought in either district, and the process of the court will run in both. So, under section 8, Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], where the object of the suit is to assert a claim or lien against property, or to remove a cloud, defendants not found within the district may be brought in by service wherever they may be found, or by publication, and the right and interest of every such defendant in the subject-matter of the suit in the district effectually bound. The cases of Trinity, etc., Ry. Co. v. Brown (Tex. Civ. App.) 46 S. W. 928, 929, and Texas, etc., Ry. Co. v. Gay (Tex. Sup.) 26 S. W. 599, 25 L. R. A. 52, may well be considered upon the relation of Circuit Courts of the United States within different judicial districts of the same state to each other. Horn's bill was undoubtedly one which might be filed in either of the Michigan districts, the personal rights of the Pere Marquette Railroad Company to be sued only in the Eastern District as that of its residence out of the way. His bill was primarily one to place a great system of going railway, whose lines covered each of the Michigan districts, in gremio legis, and have same preserved and operated for the benefit of creditors until such time as its debts might be marshaled, and the property as a unit brought to a sale. Upon

the property of this company there were a great variety of liens and incumbrances. Until these were settled and provision made for them, there was nothing which could be reached by general and unsecured creditors. The suit was a general creditors' bill, and was for the equal benefit of all who should elect to come in and present their claims. The suit was obviously one of a "local character," considered as a bill to administer the property of an insolvent railroad, within the plain meaning of section 742 Rev. St. [U. S. Comp St. 1901, p. 588], and not a transitory action as one of debt would be.

Section 742 reads as follows:

"Any suit of a local nature, at law or in equity, where the land or other subject-matter of a fixed character lies partly in one district and partly in another, within the same state, may be brought in the circuit or district court of either district; and the court in which it is brought shall have jurisdiction to hear and decide it, and to cause mesne or final process to be issued and executed, as fully as if the said subject-matter were wholly within the district for which such court is constituted."

That section is not expressly repealed by Act March 3, 1875, c. 137, 18 Stat. 470, as amended by Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]. Neither is it repealed by necessary implication, for it provides for a situation which is not covered by the acts mentioned, unless it is by the eighth section of that act in respect of suits for the clearing of a cloud, or the enforcement of a claim or lien against property within the jurisdiction of the court in which the suit is brought. If, indeed, this suit is such a suit as might be brought under the eighth section of the Act of March 3, 1875, c. 137, § 1, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], then this suit was well brought, for, by that section, the suit may be brought within either district where the property against which the proceeding shall be taken lies partly in one district and partly in another, and both districts are within the same state. This section 8 of the act of 1875 evidently applies to suits local in character. Greeley v. Lowe, 155 U. S. 58, 73, 15 Sup. Ct. 24, 39 L. Ed. 69; Jones v. Gould (C. C. A. 6th Circuit, December 4, 1906) 149 Fed. 153. If, therefore, such a bill as that of Horn's may be regarded as a bill "to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon the title," to the property of the Pere Marquette Railroad Company, it was a bill which might be filed in either of the two Michigan districts, and the effect in sequestrating, or impounding that part of the company's property in the other district would be quite as effective as if the suit be one under section 742. While there is some ground for maintaining that, as one of the objects of Horn's suit is the clearing of the title of the Pere Marquette Railroad, in order to bring a good title to sale, still I prefer to plant the jurisdiction upon section 742; for it must be clear that, if it is not such a suit as may be maintained under section 8 of the act of 1875, that section is not by necessary implication repealed by the provisions of the later law. That it is not repealed, and that such a suit as that of Horn's is a suit of "local character" within the meaning of that section, has been held in East Tenn., etc., Ry. Co. v. Atlanta, etc., Ry. Co. (C. C.) 49 Fed. 608, 15 L. R. A. 109, and in Goddard v. Mailler (C. C.) 80 Fed. 422. It fol-

lows, that the filing of Horn's bill in the Western District of Michigan, and the appointment of Judson Harmon as receiver thereunder, was an equitable attachment of the property of the defendant railroad company within both districts. The ancillary bill and ancillary receivership in the Eastern District was not needed to strengthen or confirm his authority or to bring under the receivership the funds now in question.

4. The qualified title of a receiver to the property he is directed to take and hold relates back to the time of his appointment, and actual seizure by him is not necessary to cut off rights which attach only after the order of appointment. The exceptions to the general rule in respect to property beyond the jurisdiction of the court making the appointment considered in Zacher v. Fidelity Trust, etc., Co., 106 Fed. 593, 45 C. C. A. 480, depended upon the law and policy of the state of the situs of the property, and we need not here notice them. We have in this case to deal only with the property of the Pere Marquette Railroad Company within the jurisdiction of the Circuit Court of the United States, under section 742 Rev. St. That jurisdiction, for the purpose of sequestrating the property of the Pere Marquette Railroad Company, covered the two Michigan districts in which the property of that company was situated, from the moment Judge Harmon's appointment became effective under the proceedings at Grand Rapids. If the order appointing him required him to give bond and security, his title, when he so qualified, related back to the time of his appointment, and cut off all intermediate rights. Beach on Receivers, § 217; Gluck & Becker on Receivers, § 40; and 23 Am. & Eng. Enc. of Law, 1095. Actual manual seizure was not essential to prevent the acquisition of liens upon the property by assignment, judgment, execution, attachment, or otherwise. Connecticut River Banking Co. v. Rockbridge Co. (C. C.) 73 Fed. 709; Temple v. Glasgow, 80 Fed. 441, 25 C. C. A. 540; Storm v. Waddell, 2 Sanf. Ch. (N. Y.) 494; McDonald, Shea & Co. v. Railroad, 93 Tenn. 281, 24 S. W. 252; East Tenn., etc., Ry. Co. v. Atlanta, etc., Ry. Co. (C. C.) 49 Fed. 608, 610, 15 L. R. A. 109; and High on Receivers, § 136.

5. Next it is said that the bill under which the receiver was appointed was filed by a single unsecured creditor, who had no judgment, and who claimed no lien. But the defendant debtor appeared, and, by a sworn answer, confessed the debt and its utter insolvency, and joined in the prayer for the appointment of a receiver. The objection, if tenable in view of the confession of the debt and of insolvency, was one which, in a case where the court had jurisdiction of the parties and is of general equitable cognizance, may be waived "and, when waived, stands as though no such objection ever existed." Tompkins v. Catawba Mills (C. C.) 82 Fed. 780; Sage v. Memphis, etc., Ry. Co., 125 U. S. 361, 8 Sup. Ct. 887, 31 L. Ed. 694; Mellen v. Moline, etc., Iron Works, 131 U. S. 352, 9 Sup. Ct. 781, 33 L. Ed. 178; Hollins v. Brierfield Coal, etc., Co., 150 U. S. 371, 380, 14 Sup. Ct. 127, 37 L. Ed. 1113. In the case last cited, the court expressly held that such an objection must be made in limine or it is waived, citing Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486, 32 L. Ed. 934, and other cases. In Central Trust Co. v. McGeorge, 151 U. S. 131–135, 14 Sup. Ct.

286, 38 L. Ed. 98, where a corporation had waived the fact that it was sued in the wrong district by an appearance and consent to the appointment of a receiver, the objection was subsequently made by stockholders and creditors who came in and challenged the appointment so made. After deciding that neither the complainant nor defendant were residents of the district, the court ruled that the objection, though good if made in time by the defendant, had been waived. The court then added:

"It is scarcely necessary to say that, as the defendant company had submitted itself to the jurisdiction of the court, such voluntary action could not be overruled at the instance of the stockholders and creditors, not parties to the suit as brought, but who were permitted to become such by an intervening petition."

To much the same effect is Citizens' Bank v. Union Mining Co. (C. C.) 106 Fed. 97. A most absurd result would ensue if, when the corporation has submitted to the jurisdiction of the court, either as a court of equity or to the local jurisdiction, a creditor could come in, or when brought in, might reopen the matter of jurisdiction over the debtor corporation. If such an objection is not waived once for all, so as to close the question as to stockholders and creditors, what number of creditors would conclude the rest? In Grand Trunk Ry. Co. v. Central Vermont Ry. Co. (C. C.) 85 Fed. 87, it was very logically ruled by Judge Wheeler that a mortgagee subsequently intervening and being made a defendant could not demur to the bill because the complainant who filed the bill was not a judgment creditor, being bound by the waiver of that objection by the railroad company which had answered, and consented to the appointment of a receiver.

6. An order appointing a receiver made at chambers, like an order allowing an injunction or other interlocutory order, presupposes a pending case. The objection that there was no pending suit when the order in this case was made is a misconception. I am not at all inclined to agree that when the complainant's bill and the defendant's answer were exhibited to me at Cincinnati, and an application made by both parties for the appointment of a receiver, that this lodging of the pleadings with me and this consent by the defendants was not such a commencement of the suit and filing of the bill as to make my order relate to the very time when I acted at Cincinnati. Universal Savings & Trust Co. v. Stoneburner, 113 Fed. 251, 51 C. C. A. 208. To save the question, I made my order to take effect when the bill should be filed at Grand Rapids, and directed the clerk to then issue the necessary process. Thus the order was signed by me on December 4th. It was provisional upon the actual filing of the bill, and became effective then only. The pleadings were then intrusted to one of the counsel, to be lodged in the clerk's office at Grand Rapids, and this was done, as shown by the evidence offered by the defendant, at 9:30 o'clock a. m., December 5, 1905. That the district judge then directed my order to be entered, added no force to it, if I had authority to act at all. If I did not, it is clear that Judge Wanty's order confirmed and made effective what before had been ineffective. So far as this case goes, the result is the same to the savings bank. It is said that the order was lengthy, and that it took the clerk some time to actually journalize it, and that

there was some delay in the giving of a bond. These delays are of no practical moment. The rights of parties are not dependent upon delays of this kind in respect to such interlocutory chamber orders. The appointment related back to the actual time of the appointment, which was the actual time when the bill was filed, because my order was framed to become effective only then, and was as if I had made it simultaneously with the filing of the bill. Again, the order in all its details was fully written out when signed by me; and, when this written and signed order was filed together with the bill and answer, any delay in transcribing upon the order book was of no moment. In re McCall (C. C. A.) 145 Fed. 898. But by relation the appointment was effective from the time the order and pleadings were filed in the office. The authorities upon this doctrine of relation have heretofore been cited.

7. But it is most strenuously urged that the making of such an order at chambers was an unauthorized act, and that a receiver could only be appointed in open court. The authority of a federal judge at chambers, under the equity jurisdiction conferred upon the courts of the United States, is not to be determined by the authority of a state judge under a different system of jurisprudence. Indeed, in nearly every state the authority of a judge in vacation and at chambers depends upon statute, and the cases to be found cited in the text-books and encyclopedias upon this question will be found in most instances to be controlled by some local statute. Thus, in Illinois, what a judge may do in vacation is regulated by statute, and the courts of that state have held that the appointment of a receiver in vacation is a nullity. Hammock v. Loan & Trust Co., 105 U. S. 77, 26 L. Ed. 1111. In other states the authority of a state judge to make an appointment in vacation has been upheld, sometimes as inherent to the office of an equity judge, and sometimes by force of statute. Smith v. Butcher, 28 Grat. (Va.) 144; Cox v. Volkert, 86 Mo. 505; Real Estate Associates v. Superior Court, 60 Cal. 223; Kilgore v. Hair, 19 S. C. 486, 488; Alexander v. Manning, 58 Miss. 634; and Moritz & Weil v. Miller, Schram & Co., 87 Ala. 331, 6 South. 269. The power of a United States judge to do chamber business is in large part ascribable to the statutory provisions of section 638, Rev. St. [U. S. Comp. St. 1901, p. 519], whereby Circuit Courts are declared to be always open for the transaction of certain business and empowering any judge of a court "to make and direct and award at chambers or in the clerk's office, and in vacation as well as in term, all such process, commissions, orders, rules, and other proceedings, whenever the same are not grantable of course, according to the rules and practice of the court." This statute is little, if anything, more than a recognition of the inherent and ancient powers of a Chancellor exercising the powers of equity judges in matters of equitable cognizance, according to the rules and practice of the English courts of equity, at the time of the adoption of the Constitution, under which the judicial power of the United States is declared to extend to all cases at law and in equity arising under the circumstances prescribed by section 2 of article 3. Although there has been some statutory regulation of the chambers jurisdiction and practice by English equity judges since the adoption of our equity rules in 1842, yet these regulations are chiefly important in doing away with the

Master in Ordinary, and imposing his powers upon the Chancellor. It is said in Daniel's Chancery Pl. & Pr. (4th Am. Ed.) 1322–1323, speaking of the practice in force when he wrote:

"That the Master of the Rolls and the Vice Chancellor "are required to sit at chambers, * * * for the dispatch of such parts of the business of the courts as can, without detriment to the public advantage arising from a discussion of questions in open court, be heard at chambers."

The rules in equity prescribed by the Supreme Court under authority of Congress are in furtherance of section 638, Rev. St. Those rules which most bear upon the chamber business of a judge, are rules 1, 2, and 3. These read as follows:

"1. The Circuit Courts, as courts of equity, shall be deemed always open for the purpose of filing bills, answers, and other pleadings; for issuing and returning mesne and final process and commissions; and for making and directing all interlocutory motions, orders, rules, and other proceedings, preparatory to hearing of all causes upon their merits.

"2. The clerk's office shall be open, and the clerk shall be in attendance therein, on the first Monday of every month, for the purpose of receiving, entering, entertaining, and disposing of all motions, rules, orders, and other proceedings, which are grantable of course and applied for, or had by the parties or their solicitors, in all causes pending in equity, in pursuance of the rules hereby prescribed.

"3. Any judge of the Circuit Court, as well in vacation as in term, may, at chambers, or on the rule-days at the clerk's office, make and direct all such interlocutory orders, rules, and other proceedings, preparatory to the hearing of all causes upon their merits in the same manner and with the same effect as the Circuit Court could make and direct the same in term, reasonable notice of the application therefor being first given to the adverse party, or his solicitor, to appear and show cause to the contrary, at the next rule-day thereafter, unless some other time is assigned by the judge for the hearing."

It must be borne in mind that the authority of the judge at chambers, and I speak altogether of a judge exercising equity powers, and not of a common-law judge, or a judge administering law, as distinguished from equity, is that of the court itself. Daniel's Chancery Pl. & Pr. (4th Am. Ed.) 1323; Prescott v. Roe, 9 Bing. 104; Walters v. Anglo-Am., etc., Trust Co. (C. C.) 50 Fed. 317. When there is no settled practice to guide a judge, the limitations upon his powers at chambers must be found in the distinction between those steps, in an equity cause, which tend to prepare the cause for hearing or preserve the subject-matter until such a hearing, and those judgments which adjudicate the ultimate merits. That which does not adjudicate the merits is interlocutory. Mr. Daniel defines an "interlocutory application" as "a request to the court or to a judge at chambers, for its interference in a matter arising in the progress of a cause or proceeding; and it may either relate to the process of the court, or to the protection of the property in litigation pendente lite, or to any matter upon which the interference of the court or judge is required before, or in consequence of a decree or order." He adds that such an application may be made "either to a judge at chambers or to the court." Daniel's Chancery Pl. & Pr. (4th Am. Ed.). In 2 Daniel's Ch. Pl. & Pr. (4th Am. Ed.) 1734–1735, it is stated that when the suit has been commenced by summons, or the application is by consent, an appointment may be made at chambers. The author cites Blackborough v. Ravinhill, 6 Jur. 1085, V. C. S.; Grote v. Bing, 9 Hare Ap. 50.

The limitations to suits commenced by "summons" means no more than that there must be a pending suit, a conceded prerequisite to any interlocutory order not expressly authorized by statute. The consent referred to is of course equivalent to summons and service. If Mr. Daniel's definition of an interlocutory order is correct, and we see no reason for doubting it, an application for a receiver pendente lite is plainly within any reasonable interpretation of the third rule in equity. Thus, in Vose v. Reed, 1 Woods, 647, Fed. Cas. No. 17,011, where Mr. Justice Bradley entertained at chambers a contempt matter, and a motion to appoint a receiver, the question of his authority to deal with the question of contempt in disobeying process was debated and sustained, while the other matter was treated as of course. The scarcity of express ruling is due to the interlocutory character of the subject. The practice in the matter has, to my knowledge, never been questioned in this circuit. Why such a motion may not be entertained at chambers, in view of the conceded chamber powers of an equity judge in matters just as important, does not occur to me. The matter of a hearing on notice is no more important in court than at chambers. In both cases there must be notice and an opportunity to be heard, unless the matter be so plainly urgent as not to afford opportunity for either. Daniel's Chan. Pl. & Pr. 1735 (4th Am. Ed.); Beach on Receivers, § 148; Sandford v. Sinclair, 8 Paige (N. Y.) 372; In re Parker, 12 L. R. Ch. D. (1879) 293. In the last case cited, Fry, Justice, appointed a receiver, although the sole defendant, an executrix, had died before summons and the action had abated, to hold until the appointment of an administrator de bonis non.

In United States v. The Little Charles, 1 Brock. 380, Fed. Cas. No. 15,613, Chief Justice Marshall held that an order for the release of a libeled vessel made at chambers of the judge was as valid as if made in open court. Objection being made that the proceeding was void, upon the ground that no power is given to a judge, except when sitting as a court, and that the ceremony of declaring himself to be a court was essential, the Chief Justice said:

"This objection seems rather technical than substantial. By law, the district judge alone composes the court. He is a court wherever, and whenever he pleases. No notice to parties is required. No previous order is necessary. The various ex parte orders which admiralty proceedings require, renders this informal mode of acting essential to justice and expedition. The judge will take care that neither party be injured by the orders which he makes ex parte, and where they are, of course, it is convenient that they should be made without the formality of summoning the parties to attend. It does not seem to be a violent construction of such an act, to consider the judge as constituting a court whenever he proceeds on judicial business. Such seems to have been the practice in this, and in other districts of the United States. Had the judge prefixed to his order such words as these, 'At a special court, held at ——, on this —— day of ——, it is ordered, etc.,' the proceedings would have been regular, for the law does not, in terms at least, require that the order for a special court should be made in court, or made any given time previous to its session. To every purpose of justice, the order of the judge, made in his character as judge, is made by him as a court, whether he declares himself, in words, to be a court, or not. This order is, in its nature, judicial. It is such an order as may be made ex parte; it is signed by the judge, in his official character, and directed to the officer of the court. Under such circumstances, I cannot overturn a practice which is convenient, which is not liable to abuse, on a mere technical objection."

In the case styled In re Neagle, 135 U. S. 1, 55–56, 10 Sup. Ct. 658, 34 L. Ed. 55, this case is referred to and approved by Justice Miller. Referring to the same subject, the learned justice said:

"There are many duties which the judge performs outside of the courtroom where he sits to pronounce judgment or to preside over a trial. The statutes of the United States, and the established practice of the courts, require that the judge perform a very large share of his judicial labors at what is called 'chambers.' This chamber work is as important as necessary, as much a discharge of his official duty as that performed in the courthouse. Important cases are often argued before the judge at any place convenient to the parties concerned, and a decision of the judge is arrived at by investigations made in his own room, wherever he may be, and it is idle to say that this is not as much the performance of judicial duty as the filing of the judgment with the clerk, and the announcement of the result in open court."

Nothing is more well known than the practice referred to by the Justice Miller, of judges hearing equity causes upon their merits at a place convenient to him and the parties other than the places where the regular terms of open court are held, just as the present hearing has occurred by consent at Cincinnati, in my chambers there. The conclusions thus reached, when subsequently entered by the direction of the judge upon the journal of the court in which the case is pending, constitutes no small part of the business of every judge. It was denied by some of the department officials at Washington that the officers of the court who entered such orders in the absence of the judge were entitled to the usual per diem allowed them for attendance upon a court. The fees claimed were sued for, and a judgment in favor of the clerk was sustained in United States v. Finnell, 185 U. S. 236, 243, 22 Sup. Ct. 633, 46 L. Ed. 890. Justice Harlan for the court, after referring to and citing sections 574 and 638, Rev. St. [U. S. Comp. St. 1901, pp. 475, 519], among other things, said:

"As will be seen from those sections, the District and Circuit Courts of the United States are always open for the transaction of certain kinds of business which, we think, may be transacted under orders of the judge, who may at the time be absent from the place, room, or building in which the court is held. The business transacted by the appellee was such as could be transacted by the clerk under the orders of the judge. It is too narrow an interpretation of the statute to hold that such business was not actually transacted in court."

But, if an appointment at chambers over the objection of the defendant would not be erroneous, it certainly can be made when, as in this case, the defendant not only appeared without objection, but by a sworn answer, sanctioned antecedently by its board of directors, and joined in the application. Daniel Ch. Pl. & Pr. (4th Am. Ed.) 1734; First Nat. Bank v. United States Encaustic Co., 105 Ind. 236, 4 N. E. 846.

8. Finally, it is said, that the order of appointment was made when sitting at chambers within my circuit, but without the geographical limits of the Western District of Michigan, and that the power of a circuit judge cannot be exercised validly outside of the particular district in which the order is to be entered. It might be sufficient to dispose of this objection by the simple statement that the defendants to the Horn bill appeared and exhibited to me their sworn answer, and joined in the application for an order appointing a receiver. Neither do those defendants make any objection now. In Roberts. v. Reilly,

116 U. S. 80, 93, 6 Sup. Ct. 291, 29 L. Ed. 544, an appeal from a judgment of the District Court for the Southern District of Georgia was taken to the Circuit Court in a habeas corpus case, an appeal admissible prior to the Court of Appeals act of 1891, which appeal was heard by Circuit Justice Woods in chambers at Atlanta, a town within the Northern District of Georgia. No point was made because the hearing occurred outside of the District of Southern Georgia, but it was objected that the hearing occurred at vacation and at chambers. The court upon this matter said:

"In regard to the objection now taken that the hearing of the appeal was had before the circuit justice at Atlanta at chambers, and not at Savannah in open court, it is sufficient to say that the order to that effect was made without objection taken at the time, or afterwards, in the District or Circuit Court, or at the hearing before Justice Woods; that the appellant appeared at the time and place by counsel and was heard; that the arrangement was made for the convenience of the parties and to avoid delay; and that it does not seem to have involved any hardship or injustice to the party now complaining. The objection, if it could ever have been properly interposed and insisted on, cannot now be made for the first time. It comes too late."

Neither can such an objection lie in behalf of one who occupies the attitude of a creditor. If the debtor corporation is bound by an order made appointing a receiver, its creditors and stockholders must be, fraud out of the way, or we would have the absurd result that the receivership would be valid as to the railroad company, but invalid as to any creditor who should choose to assert a charge or lien against the property in the receiver's custody. Central Trust Co. v. McGeorge, 151 U. S. 131, 135, 14 Sup. Ct. 286, 38 L. Ed. 98; Grand Trunk Ry. Co. v. Central Vermont Ry. Co. (C. C.) 85 Fed. 87. But I prefer to put my answer to this objection upon the broad ground that a circuit judge may do chambers business anywhere within his circuit. The question is one which should be put to rest. The circuit judge's commission appoints him to be a circuit judge for a particular territory, and not for any one district of a particular territory. Judicial districts, under the act of 1789, which organized the judiciary, followed state lines; that is, each state constituted a judicial district. The 13 original districts were, by the same act, divided into three circuits. Circuit Courts were required to be held in each district by two justices of the Supreme Court and the district judge, any two to constitute a quorum. With the exception due to the brief existence of circuit judges under the amended judiciary act of 1802, the Justices of the Supreme Court, as circuit justices, were required to hold the Circuit Courts, and until the act of April, 1802, providing for an allotment of justices to particular circuits, each justice held general jurisdiction coextensive with the territory of the United States, and the Circuit Courts were held by them in rotation. By an act passed in 1872 (Act June 1872, c. 255, § 7, 17 Stat. 197), now section 719, Rev. St. [U. S. Comp. St. 1901, p. 581], justices were prohibited from granting injunctions outside of their circuits, except when the circuit judge of the circuit or the district judge of the district could not do so or by consent of the parties. Justice Bradley in an opinion in a cause prior to the act of 1872, published as a note to Searles v. Jacksonville, etc., Ry. Co., 2 Woods, 621, Fed. Cas. No. 12,586, said, that he entertained no doubt but that

a circuit justice might grant an injunction outside the limits of his circuit. This he held to be so from the fact that originally the justices held the Circuit Courts in rotation. He said, among other things:

"All of them were, in law, judges of all the Circuit Courts. The mere circumstance of allotment could not affect their general powers, at least as regards cases in their own circuits. As the Circuit Courts were courts of equity as well as of law, the issuing of injunctions was part of their jurisdiction, and these must often have been issued, and other ex parte orders made in vacation. The justices of the Supreme Court must have exercised these powers. But it was impossible that there should have been such justices always present in every circuit, much less in every district. Twice a year, at least, they were required to hold sessions of the Supreme Court at the seat of government; and consequently, they could then be only in one district of the whole 13. And absence from a district would have been no less effectual than absence from the circuit in depriving them of jurisdiction over a case pending in the district; for the Circuit Courts are courts in and for particular districts, and not for the whole circuit. Orders of course were undoubtedly made by the district judges as assistant judges of the Circuit Courts; but these judges were not authorized to issue injunctions in said courts, until the passage of Act Feb. 13, 1807 (2 Stat. 418, c. 13). As a matter of necessity, therefore, the justices of the Supreme Court must have issued injunctions outside of the territorial jurisdictions of the Circuit Courts in which the cases were pending, unless we adopt the improbable conclusion that they transacted no chamber business in equity whatever, except when they happened to be actually present in the particular district as well as in the particular circuit in which the case was pending. It is true that the fourteenth section of the judiciary act (1 Stat. 81, c. 20), in conferring express power to issue writs, confers it upon the courts and not upon the judges; but, under proper circumstances, the judges exercise the power as incidental to their office. It is the power of the court which they, as its officers, exercise, in the only way in which the power can be exercised in vacation."

Circuit judges were authorized by Act April 10, 1869, c. 22, § 2, 16 Stat. 44, now section 607, Rev. St. [U. S. Comp. St. 1901, p. 487], which provides that:

"For each circuit there shall be appointed a judge, who shall have the same power and jurisdiction therein as the justice of the Supreme Court alloted to the circuit."

Thus the measure of the power and authority of a circuit judge within the territorial limit of his circuit is the power and authority of the circuit justice allotted to that circuit. If the circuit justice may exercise his authority in chambers, either inside or outside his circuit, and outside of the particular district of the litigation, a circuit judge may do the same judicial acts, provided only he acts within his circuit. Even in respect of the allowance of writs of injunction, the justices have not regarded themselves as debarred from granting such injunctions, provided it appeared that neither the circuit judge nor the district judge could be obtained. Thus, in United States v. Louisville, etc., Canal Co., 4 Dill. 601, Fed. Cas. No. 15,633, Justice Miller granted an injunction upon a bill pending in the Sixth Circuit, at chambers in New Jersey; he not being the justice allotted to the Sixth Circuit. It is a fact of which I may take judicial notice, that in this circuit there has been an uniform practice by the circuit judges to exercise their authority in chambers business at any place where the convenience of the judge and counsel might require,

and it is not believed that any such narrow construction of the territorial functions of such judges has ever before been mooted.

There is no good reason for such a contracted interpretation of the powers of such judges in respect of those matters which do not demand a hearing in regular session. Reasons of great public convenience demand quite a contrary view. The suggestion that counsel and litigants should not be inconvenienced by being called out of their districts has little in it compared to the detriment to the public which will ensue if the circuit justice or circuit judge must go inside the imaginary lines of a particular district before he can give validity to an order which is more often than otherwise made upon briefs only at his place of residence or where his functions may call him. The same line of reasoning would require those judges, as well as the district judges, to hold their chambers only at the place where open sessions are held within the district. Reasons of public convenience, applicable to jury trials, and even to final hearings in equity cases, are by no means applicable to chambers business, and nothing which tends to clog such work that has no real substance in it should be regarded as sufficient to lay down a hard and fast rule with respect to the locality of chambers work, provided only, it is done within the circuit of the circuit judge or the district of the district judge. Litigants are seldom in attendance upon equity hearings at chambers or otherwise, and some reasonable discretion with reference to the time and place for chamber hearings must be conceded under any well-organized judicial system. In view of the fact that circuit judges are commissioned as judges for a particular territory, called a circuit, that they are the circuit judges of all the circuit courts within that large territory as well as judges of the courts of appeal, which courts now absorb a large part of their energies, it is most unreasonable to construe the statutes and rules, which confer chamber powers in respect of interlocutory matters, as limiting their exercise to points within the particular district of a great circuit where the case may be pending. Rather should the statutes and rules be construed as authorizing chambers business at any point within the territorial limits of the circuit where the business of the judge may require him to be.

This was the sensible construction put upon the chambers powers of the district judges of the territory of Washington, such judges being also required to attend the Supreme Court of the territory. The Supreme Court, in Hollon Parker, Petitioner, 131 U. S. 221, 225, 9 Sup. Ct. 708, 33 L. Ed. 123, when the validity of an allowance of an appeal at chambers outside of the district of the judge, but when attending the Supreme Court as a member, said:

"The second objection is equally untenable. When the law allowed the proceeding to be taken at the chambers of the judge of the court, it meant at the chambers where he can conveniently attend to business relating to cases in his district, not that they must necessarily be within the territorial limits of his district. As one of the judges of the territory, it is a part of his duty to sit in the Supreme Court. He is one of its members, and his chambers, whilst the Supreme Court is in session, and he is in attendance upon it, may be at the place where that court is sitting."

9. The conclusion is that as to the sums received from express companies after 9:30 a. m., December 5, 1905, the defendant is obstructing

151 F.—41

the receiver's right and claim, and for the aggregate sum of $40,707.51, with interest and costs a judgment will be entered. The intervening petition of State Savings Bank asking to be allowed to attach certain stocks as the property of the Pere Marquette Railroad Company, and subject the same to satisfaction of its debt against that company, must, of course, be denied.

It proceeds upon the theory that the appointment of a receiver in the Horn Case was a nullity, and his title and possession a matter which may be disregarded by any creditor who chooses to raise the objection already herein considered in respect to the deposits which have been wrongfully withheld from the receiver.