JULIUS J. HIRSCHFIELD,

*vs.*

THE READING FINANCE AND SECURITIES COMPANY.

*New Castle, Feb.* 14, 1912.

The appointment of receivers and the administration of an insolvent corporation's assets for the benefit of creditors did not effect a dissolution of the corporation.

Where a corporation's assets, including books and records, were sold by receivers in insolvency, the effect of depriving it of the books and papers, including such as contained evidence of its organization and continued corporate existence, would not dissolve the corporation, as such evidence could be perpetuated by making sworn copies, etc.

On receiver's sale of a corporation's assets, an insurance company purchased unconverted property and assets, consisting of claims for stock subscriptions and notes given therefor, claims for amounts due for subscriptions to the stock of the purchasing company and notes given for the same, and all other debts due. Prior to the sale the purchasers knew that the receivers had the corporation's books and papers in their possession, and that it would be necessary that they should be delivered to such purchaser, in order that it be enabled to prove the facts to establish such claims, in order to collect the claims. *Held*, that the purchaser was entitled to have such books and records delivered to it by the receivers, subject to the corporation's right to make copies of the minute book, stock ledgers, and any other books and papers that were necessary to preserve evidence of the corporation's organization and continued corporate existence.

PETITION FOR POSSESSION OF BOOKS OF A CORPORATION. There are two conflicting applications pending before the Chancellor by which the ownership of the books and papers of The Reading Finance and Securities Company is claimed, one by the corporation and the other by the Citizens' Life Insurance Company of America. The Reading Finance and Securities Company has heretofore been adjudged by this Court to be insolvent, and receivers for it have been appointed, and by order of the Chancellor all the property of the company and all its books, etc., were delivered to the receivers. Subsequently all its affairs were fully administered by the receivers, the property sold, collected and converted, and the proceeds paid over to its creditors, and the only now remaining duty of the receivers is to hold the books and papers of the company which so came into their possession until the conflicting claims thereto are settled. At the sale by the receivers they sold the then remaining and unconverted property and assets of the company in three lots, all of them being purchased by the Citizens' Life Insurance Company of America, one of the petitioners, and the chief creditor, and these lots were described as follows:

(1) Claims for amounts due subscriptions to the capital stock of The Reading Finance and Securities Company, and notes given for the same.

(2) Claims for amounts due for subscriptions to the capital stock of the Citizens' Life Insurance Company of America, and notes given for the same.

(3) *All other* debts due and *property of* The Reading Finance and Securities Company remaining in the hands of the receivers.

*Robert H. Richards*, for the petitioner, Citizens' Life Insurance Company.

*Saulsbury, Ponder & Morris*, for the petitioner, The Reading Finance and Securities Company.

THE CHANCELLOR: By its application the purchaser asserts its knowledge prior to the sale that the receivers had the books and papers of the company, and that it is necessary that the petitioner should have them to enable it to realize on the claims mentioned in lots numbers one and two above mentioned,

by suits and in other litigation pending.   These allegations are not denied by the insolvent company, but the latter asserts that the books were delivered to the receivers to enable them to administer the affairs of the insolvent company and as that purpose has been concluded, the books and papers are the property of the company and should be returned to it; and it is further urged that the books are not property, the ownership of which this Court has power to decide.   It is correctly urged by counsel for the insolvent company that it was not dissolved by the appointment of the receivers.   It is also probably true that some of the books contain evidence of its organization and continued corporate existence; but to urge further that to deprive it of these books and papers would in effect work a dissolution of the company, is an untenable conclusion.   Even if there was danger of this result, the evidence could be perpetuated in some way in the order awarding delivery of the books, etc., to the purchaser, as for instance, by allowing sworn copies thereof to be made.

It is further urged by the insolvent corporation that these books and papers, being the private books and papers of the company, are not goods and chattels which could have been levied on by an execution against the company.   In the case of *Oystead v. Shed*, 12 *Mass.* 505, it was held that private papers or account books of the defendant in that case were not subject to attachment.   But while the taking possession of the property and affairs of an insolvent corporation by a receiver appointed by the Chancellor is in some respects like an equitable execution, still it has a wider scope, and property which could not be reached by any process of courts of law by creditors may be seized and realized on by sale or collection for the benefit of all the creditors of the insolvent corporation.   It is the purpose and object of such a proceeding to apply every scrap of its property and assets of every kind to the payment of its creditors.   In the case of *American Construction Company v. Jacksonville, etc., Co.*, 52 *Fed.* 937, the Court held that an order to the officers of the company to deliver to the receiver of the company all the property, effects, etc., of the company, included the corporate seal and all books relating to the past

transactions of the company. This case does not necessarily mean that the receiver has a right to sell the corporate seal, but probably would be an authority that the custody of the seal should be given to the receiver to be used for whatever proper purpose it may be found useful in winding up or administering the affairs and assets of the company.

Attached to the petition of the insolvent company is a list of the books and papers held by the receivers, and of these books and papers it is not likely that more than three kinds of books would be of any use to preserve evidence of its corporate existence, viz., the minute book and the two original stock ledgers. All the other books and papers apparently relate to past transactions of the company in the prosecution of its business, and not to its corporate existence. As hereinabove indicated the the order awarding all the books and papers to the purchaser could either exempt these books, or the corporation could be allowed to have sworn copies of them. In either of these ways it may be protected from possible detriment. The application of The Reading Finance and Securities Company does not ask for the delivery to it of the corporate seal, but it is so manifestly necessary to it in the execution of certain corporate powers, that it should remain with the company, and upon application it will be so ordered.

But the purchaser, the Citizens' Life Insurance Company of America, claims ownership of the books, or at least asserts its right to have them now delivered to it, because it purchased them as part of the "property" of The Reading Finance and Securities Company included in parcel number three, or else because having purchased certain subscription claims included in lots numbers one and two, it must have these books and papers as evidence to enforce these claims. This latter allegation is not denied and seems reasonable, and is to be considered to be true. This allegation includes all the books and papers. In the absence of some controlling or potent reason to the contrary, the Court, having by its receivers sold certain claims which can be collected only by suits thereon, should give the purchaser of the claims that which the purchaser needs in order to realize upon the claims. This seems manifestly clear

and just, and any other view would be unfair to the purchaser. This reason being a sufficient one it is not necessary to decide whether the books and papers were included within the description of the word "property" mentioned in the return of sale and the orders of the Chancellor made thereon.

The conclusion is that the Citizens' Life Insurance Company of America, the purchaser of the claims and property of the company referred to in the petition, is entitled to have delivered to it all the books and papers of The Reading Finance and Securities Company held by the receivers, for the reasons hereinabove assigned. But to avoid even the possibility of injury to The Reading Finance and Securities Company, it will, upon application and before an order is made for the delivery of the books and papers to the purchaser, be allowed to make copies of the minute book and stock ledgers and any other books and papers that may be shown to be necessary to preserve evidence of its organization and continued corporate existence.